FRANCES S. SCHOTT v. CONTINENTAL AUTO INSURANCE UNDERWRITERS, Appellant.—31 S. W. (2d) 7.

Division One, September 4, 1930.

*Ellison, Dabbs & Flora* and *Randolph & Randolph* for appellant.

94

*Eastin & McNeely* for respondent.

RAGLAND, J.—"This is a suit in equity brought under Sections 1 and 2 of House Bill No. 53, enacted by Fifty-third General Assembly of Missouri, appearing at page 274, Laws of Missouri, 1925.

. . .

"Judgment was rendered in favor of plaintiff, from which judgment the defendant, Continental Auto Insurance Underwriters, appealed. The defendant Midwest Transit Company, although served, made no appearance in the case.

"The plaintiff is a resident of St. Joseph, Missouri. The defendant Continental Auto Insurance Underwriters, hereinafter referred to as the Underwriters, is a reciprocal or inter-insurance exchange, organized under the law of Illinois and doing business in Missouri under Article 13, Chapter 50, Revised Statutes 1919, as amended by laws of 1921. Defendant Midwest Transit Company, hereinafter referred to as the Bus Company, is a motor bus company operating between Chicago, Illinois, and Kansas City, Missouri, with offices in St. Louis, Missouri.

"On February 26, 1926, the defendant Underwriters issued its policy of insurance to the Bus Company covering the motor bus involved in the accident in which plaintiff was injured, which bus was owned by the defendant Bus Company, and which policy was in force at the time of the accident.

"The policy provided indemnity in part two thereof in favor of the assured as follows:

" 'Part II—Indemnity.

" 'Against actual loss from legal liability arising or resulting from claims upon the Assured for damages by reason of the ownership, maintenance, or use of the automobile described above, owned by the Assured; if such claims are made on account of:

" 'Death and Injury to Persons.

" '(A) Bodily injuries including death resulting therefrom, suffered or alleged to have been suffered, by any person or persons, as the result of an accident occurring while this policy is in force; Provided, however, that the liability of the Underwriters is limited to Five Thousand Dollars for injury to or death of any one person, and, subject to the same limit for each person, and limited to Ten Thousand Dollars for any one or more accidents involving injuries to or death of more than one person.'

"Said policy provided under paragraph 2 of the conditions thereof:

"'2. The assured shall give the Underwriters at its Home Office in Springfield, Illinois, immediate written notice of any accident, damage or loss covered by the provisions of this policy with the fullest information obtainable. . . . It is a condition of this policy that in the event the assured fails to furnish the Underwriters in writing at its Home Office at Springfield, Illinois, notice of any accident, damage, theft or loss covered hereunder within five days from the date of the happening thereof, the Underwriters shall not be liable to the assured for any such loss or damage.'

"Paragraph 12 of the conditions of said policy provided:

"'12. No suit or action on this policy for the recovery of any loss or damage shall be sustainable in any court of law or equity until sixty days after each and all of the foregoing conditions and requirements shall first have been complied with by the assured, and the amount of the said loss or damage ascertained and determined under the provisions of this policy; and if the loss be sustained under clauses A and /or B, Part II of this policy, it shall only be brought by the assured for reimbursement of the amount of the cost actually incurred, and paid in money by the assured, after trial of the issue (the loss shall include all court costs legally assessed against the assured in such suit, and interest accruing on the judgment), not exceeding, however, in any event, the amount specified in clauses A and /or B, Part II of this policy.'

"Paragraph 15 of the conditions of said policy provided:

"'This policy is issued and accepted subject to the foregoing conditions and stipulations, together with such other provisions, conditions, stipulations and agreements as may be endorsed hereon or attached hereto.'

"On July 5, 1926, plaintiff was riding in a touring car, owned by her husband and driven by her daughter, on Highway No. 40 in Lafayette County, Missouri, near Odessa, and on the evening of that day, while attempting to pass a bus of the defendant Bus Company, and without coming in contact with the bus, ran off the pavement and was injured. She thereafter filed suit in the Circuit Court of Lafayette County, Missouri, against the defendant Bus Company, and on February 22, 1927, judgment was rendered by default for $10,000 in favor of plaintiff and against the defendant Bus Company. This judgment is the basis of this suit.

"In the trial of this case plaintiff made formal proof of the policy of insurance issued by the Underwriters to the Bus Company, the judgment in the Circuit Court of Lafayette County, and proof that no payment had been made on that judgment. Also, the plaintiff introduced as a witness Miss Marie Schott, driver of the car in which plaintiff was riding at the time she was injured, who gave her version of the cause of the accident.

"The defendant Underwriters took the depositions of the officers and driver of the Bus Company, and the depositions of the officers and employees of the Underwriters at Springfield, Illinois, for the purpose of showing that the Bus Company never at any time gave the Underwriters notice of the accident of July 5, 1926, in which plaintiff was injured. Two of the officers of the Bus Company testified that they mailed a notice to defendant. Defendant contends these witnesses had the accident of July 5, 1926, confused with an accident occurring near the same place and with same driver, August 19, 1926, and that the first notice that the Underwriters ever had of this accident was on October 7, 1926, when J. H. Stolper, an attorney for the Bus Company, residing in Muskogee, Oklahoma, wrote a letter to the Underwriters at Springfield, Illinois, enclosing in this letter the summons and petition of plaintiff's suit filed in Lafayette County against the defendant Bus Company. The policy of insurance provided that the Bus Company should within five days after any accident happened notify the Underwriters of such accident. The defendant herein contends that since it received no notice of the accident until more than three months after the accident occurred, it was not bound under its policy of insurance to defend the suit of plaintiff against the Bus Company in Lafayette County, and the Underwriters returned the summons and petition to the attorney for the Bus Company at Muskogee, Oklahoma, the same day they were received, October 27, 1926, advising him that they were not interested in that suit. Mr. Stolper, the attorney for the Bus Company, filed a demurrer to plaintiff's petition in Lafayette County, but made no further defense to the action, and judgment was taken on her petition by default in the sum of $10,000 against the defendant Bus Company.

"Defendant Underwriters set out in its answer and pleaded as a further defense to plaintiff's cause of action that said Act of 1925, upon which plaintiff's petition is based, is not applicable to reciprocal or inter-insurance exchanges operating under Article 13, Chapter 50, Revised Statutes of Missouri of 1919, and also that said Act is unconstitutional in that it violates Section 34 of Article 4 of the Constitution of Missouri in that it does not state that it repeals or amends Section 6385 of Article 13, Chapter 50, of the Revised Statutes of Missouri of 1919; and that said Act violates Section 28, Article 4, of the Constitution of Missouri in that its title does not clearly express its subject, and that said title does not show that it creates direct liability in favor of injured claimants against insurers, and that it prohibits and restrains insurer's rights to make purely indemnity contracts, but the title to said Act indicates that it regulates only the manner of payment under liability contracts of insurance after the loss has occurred; and further that said Act is unconstitutional as being in violation of Section 28

of Article 2 of the Constitution of Missouri in that it unlawfully deprives defendant of its right of trial by jury in the determination of the questions of fact in actions at law, and unlawfully deprives it of its legal defense to said action.

"The defendant Underwriters at the beginning of the case objected to the introduction of any evidence on the ground that the plaintiff's petition did not state facts sufficient to constitute a cause of action, which was overruled by the court, and at the conclusion of the case the court entered a decree finding that the defendant Underwriters is indebted on account of the injury to plaintiff in the sum of $5,000, and adjudged and decreed that the defendant Underwriters pay to the plaintiff upon said judgment, and under the terms of said policy, the sum of $5,000, and that the plaintiff recover her costs in this behalf expended."

The foregoing statement of the case by appellant is concurred in by respondent. The single issue of fact involved is whether the Bus Company gave the Underwriters notice of the accident in conformity with the terms of the policy. Some further statement of the evidence relating thereto will be made when that issue is taken up for consideration.

Appellant's contentions, as forecast in its answer and covered by its assignments of error, are as follows: (1) The Act of 1925, referred to in the answer, is not applicable to reciprocal or interinsurance exchanges operating under Article XIII, Chapter 50, Revised Statutes 1919; (2) the subject of the act is not clearly expressed in the title as required by Section 28, Article IV, of the Constitution; (3) the Act denies the right of trial by jury as guaranteed by Section 28, Article II, of the Constitution; and (4) the evidence fails to show that the defendant Bus Company gave appellant notice of the accident as required by the policy.

I. Section 6385, the last section of Article XIII, Chapter 50, relating to reciprocal or inter-insurance contracts, is as follows:

"Except as herein provided no law of this state relating to insurance shall apply to the exchange of such indemnity contracts: *Provided, however,* that the provisions of the retaliatory law shall apply."

The Act of 1925 is as follows:

"An Act to regulate the payment under contracts of casualty insurance occasioned by losses on account of bodily injury or death or damage to property, and providing for the manner and form of remedy.

"Section 1. In respect to every contract of insurance made between an insurance company, person, firm or association, whether a stock, a mutual, a reciprocal or other company, association or

organization, and any person, firm or corporation, by which such person, firm or corporation is insured against loss or damage on account of the bodily injury or death or damage to property by accident of any person, for which loss or damage such person, firm or corporation is responsible, whenever a loss occurs on account of a casualty. covered by such contract of insurance, the liability of the insurance company, if liability there be, shall become absolute, and the payment of said loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, or damage, or death, or if the insured becomes insolvent or discharged in bankruptcy during the period that the policy is in operation or any part is due or unpaid; occasioned by said casualty. No such contract of insurance · shall be canceled or annulled by any agreement between the insurance company and the assured after the said assured has become responsible for such loss or damage, and any such cancellation or annulment shall be void.

"Sec. 2. Upon the recovery of a final judgment against any person, firm or corporation by any person including administrators or executors, for loss or damage on account of bodily injury or ˙death, or damage to property if the defendant in such action was insured against said loss or damage at the time when the right of action arose, the judgment creditor shall be entitled to have the insurance money, provided for in the contract of insurance between the insurance company, person, firm or association as described in the preceding section, and the defendant, applied to the satisfaction of the judgment, and if the judgment is not satisfied within thirty days after the date when it is rendered, the judgment creditor may proceed in equity against the defendant and the insurance company to reach and apply the insurance money to the satisfaction of the judgment."

Appellant's argument in support of its contention under this head seems to run as follows: The Act of 1925 (hereinafter called the Act) is a general law; Said Article XIII relating to reciprocal and inter-insurance contracts, including said Section 6385, is a special law; Section 6385 provides that no law of this State relating to insurance shall apply to the contracts of companies operating as reciprocals; the Act does not in express terms repeal or amend Section 6385; and a general law does not repeal a prior special law by implication. "It is . . . true that the presumption against implied repeals has peculiar and special force when the conflicting provisions which are thought to work a repeal are contained in a local or special act and a later general act. The presumption is that the special is intended to remain in force as an exception to the general act." [25 R. C. L. 927, sec. 177.] But there is no rule which prohibits the repeal of a special act by a general one, the question being always one of intention. And there can be no

doubt but that it was the legislative intention that the Act should apply to contracts of reciprocal companies; by its express terms they are made subject to its provisions. The effect of the Act in that respect, therefore, is to engraft upon said Section 6385 another exception.

But it is said that if the Act was intended to be in any respect amendatory of Section 6385, it is to that extent void because violative of Section 34, Article IV, of the Constitution, in that it does not designate the words inserted and then set forth in full the section as amended. As to this it is sufficient to say that the constitutional provision mentioned has no application to repeals or amendments by implication. [Dorris Motor Car Co. v. Colburn, 307 Mo. 137, 155, 270 S. W.. 339.]

II. The Act appears to have been, in the main, copied from a statute of Massachusetts, which had been construed by the Supreme Judicial Court of that state, in Lorando v. Gethro, 228 Mass. 181. It must be presumed that the Legislature in adopting the statute also adopted the construction which had been put upon it by the highest court of the state of its original enactment. We shall therefore keep in mind the Massachusetts court's construction of the statute in considering the further questions raised in this case with respect to it.

Appellant insists that the subject of the Act is not clearly expressed in its title for the reason that the Act contains, among other things, the following provisions of which the title gives no intimation: (1) that whenever a loss occurs the liability of the insurer becomes absolute; (2) that payment of the loss shall not depend upon satisfaction of final judgment by insured, or the death of insured, or the insolvency, or discharge in bankruptcy of the assured; (3) that the contract of insurance may not be canceled or annulled by any agreement between the assured and the insurer; and (4) that the judgment creditor shall have a right to maintain suit directly against the insurer. Before entering upon an analysis of the Act a consideration of the mischief it was intended to remedy may not be amiss.

It had long been the custom of many companies writing policies of casualty insurance to insert in their contracts a provision similar to the one in the contract involved in this case, namely: "If loss be sustained . . . under this policy, it (suit) shall only be brought by the assured for reimbursement for the amount of the loss actually incurred, and paid in money by the assured, after trial of the issues."

In State ex rel. Western Automobile Insurance Co. v. Trimble, 297 Mo. 659, we were called upon to construe such a provision,

and in that case, although the insured had suffered judgment on account of a casualty covered by his policy, and had obtained satisfaction of record of the judgment by executing solvent notes for the amount to the judgment creditor, we felt compelled to hold that he had no cause of action against the insurer until he had actually paid the judgment *in money.*

In Goerss v. Indemnity Co., 3 S. W. (2d) 272, the St. Louis Court of Appeals reviewed at length decisions showing a studied effort of the courts everywhere, "in pursuit of manifest justice, by one process of reasoning or another, to compel the insurer to answer for the insured's liability, whether the insured had paid the liability or not." Among others, it quoted from Davies v. Maryland Casualty Co., 89 Wash. 571, as follows:

"The Davies claim against the coal company was long resisted by the casualty company. To reimburse for such a claim, when established by judgment and paid, was the purpose of its contract. The judgment has established that claim. Nothing remains except a form. The casualty company in effect says to Mrs. Davies that, if the coal Company will pay her at one end of the desk, the casualty company will repay the coal company at the other end. Not one thing besides, does it argue, is wanting to its liability except this formula. On that process it insists, not because when the coal company shall have first paid and the casualty company shall then have given reimbursement there will result to it a right, claim, or even a salvage interest against the coal company or its assets, but because it wishes the thing done in just that way. It will pay a moment after, not a moment before, the coal company pays. If the latter will but get a loan for a few moments from some one else and pay the judgment, then the casualty company will hand it a check, perhaps long previously prepared."

It had not infrequently happened that an insolvent insured, after incurring liability, effected a collusive settlement with the insurer and canceled his policy in order to thwart the collection of a judgment against him through garnishment of the insurance money.

The mischief which the Legislature had in mind is obvious; to remedy that mischief it passed an act to *regulate the payment* under contracts of casualty insurance.

An analysis of the Act discloses that it regulates the payment in three particulars: (1) it prescribes the time when the payment shall be made, (2) the person to whom it shall be made and (3) the manner in which it may be enforced. With respect to the first it accelerates the payment: the insurer may not defer payment until after a judgment against the insured has been paid by the latter in money, the obligation on the part of the insurer to pay accrues the moment judgment against the insured has been rendered. As to the second, the Act provides

that upon the recovery of a final judgment against the insured, the insurance money shall be applied to the satisfaction of such judgment, and such application may not be prevented by the insolvency or discharge in bankruptcy of the insured, nor by the cancellation of the policy or a settlement between the insurer and the insured. The third regulation merely prescribes the method by which the two preceding ones may be given effect. "Regulation of the payment" is the single objective of the Act; if it effects the changes in contracts of casualty insurance claimed by appellant, then such changes are merely incident to and grow out of the provisions regulating the payment. The Act as respects its title is not obnoxious to Section 28, Article IV, of the Constitution, as we have universally construed it. [State v. Miller, 45 Mo. 495; Ewing v. Hoblitzelle, 85 Mo. 64; State ex rel. v. Vandiver, 222 Mo. 206, 121 S. W. 45; State ex rel. v. Gordon, 261 Mo. 631, 170 S. W.. 892; Elting v. Hickman, 172 Mo. 237, 72 S. W. 700; O'Brien v. Ash, 169 Mo. 283, 69 S. W. 8.]

III. "The second section establishes a temporary lien in favor of one, who has put the damages, resulting to him from the casualty insured against, in the form of a judgment, on the amount due under the policy as between the insured and the insurer. It also affords him the usual remedies of a judgment creditor. . . . No discussion is required to demonstrate that the Legislature may establish appropriate forms of relief for existing rights or those rightly created, and that it may provide equitable procedure for the enforcement or protection of such rights." [Lorando v. Gethro, supra.]

The remedy provided for in the Act is essentially that of a creditor's bill or equitable garnishment. It is one that has long been applied by courts of chancery, and one which may be invoked by a judgment creditor when the property and funds, including choses in action, of the judgment debtor cannot be reached by execution, and when execution cannot be otherwise satisfied. [Pendleton v. Perkins, 49 Mo. 565; Geist v. St. Louis, 156 Mo. 643, 57 S. W. 766.] The Act therefore does not deny right of trial by jury as enjoyed at common law and as guaranteed by the Constitution of this State. [Bates v. Comstock Realty Co., 306 Mo. 312, 267 S. W. 641.]

IV. The appellant finally contends that it is not indebted to the Bus Company under the policy, because the latter did not give it notice of the accident in accordance with the terms of the policy. There are various provisions in the policy requiring the giving of notice. These are all collated and set forth in appellant's brief as follows:

104

"Under the heading—In Case of Loss—2: 'The assured shall give the underwriters at its home office in Springfield, Illinois, immediate written notice of any accident.'

"Under heading—Loss By Theft—3: 'In the event of the property covered herein, or any part thereof, be stolen, the assured shall immediately thereafter give a written and telegraphic notice of such theft to the underwriters at its home office in Springfield, Illinois.'

"Under heading—Assured Shall Not Assume Liability—9: 'If any suit is brought to enforce a claim against the assured, the assured shall forward immediately thereafter, by registered mail, to the underwriters at its home office in Springfield, Illinois, every summons and other process as soon as the same is served upon the assured.'

"Under the heading—Cancellation of Policy—11: 'The assured may cancel this policy at any time by giving written notice to that effect to the underwriters at its home office. This policy or any coverage guaranteed thereunder, may be canceled by the underwriters at any time, upon giving the assured five days prior notice thereof. In the event of cancellation the assured shall be entitled to a refund of the unused portion of his premium as calculated by the short-rate table of cancellation in effect at the underwriters. Notice of cancellation sent by registered mail to the assured, at his last known address as shown on the records of the underwriters, shall be sufficient.' "

The first one—"In Case of Loss"—is the one applicable on the facts in controversy here.

The president and secretary of the Bus Company each testified that they, acting in conjunction, at the Bus Company's office in St. Louis, Missouri, on July 6, 1926, the day after the accident, prepared a written notice of the accident by filling out a blank form furnished by appellant for that purpose, signed and enclosed the same in an envelope addressed to appellant at Springfield, Illinois, sealed and stamped the envelope and deposited it in a box installed in the Marquette Hotel (where the Company kept its office) by the United States for receiving mail. They further testified that the envelope so deposited had the Bus Company's return card printed on it and that the same had never been returned by the postal authorities.

Appellant's office manager testified that mail addressed to it was all delivered in a box at the Post Office in Springfield, Illinois; that he daily, and in person, carried such mail to appellant's office where he read and assorted it; that after so doing he distributed it to the proper departments of appellant's organization; that he never at any time received a notice of the accident of July 5, 1926, in which the Bus Company was a participant; and that had he re-

ceived such a notice he would have delivered it to the head of appellant's claim department. The head of the claim department testified that he had never received such a notice, and various clerical employees of appellant testified that there was no record in its office of any such notice or claim.

Appellant's counsel suggest that the Bus Company's officers have confused the accident of July 5th with another accident which occurred shortly thereafter and of which they duly mailed notice to appellant, but we find nothing in the testimony of these witnesses from which such a conclusion can be fairly drawn.

If the testimony of the witnesses on each side be accorded the same degree of credibility, the notice was lost in transmission; and, if so, was the provision of the policy with respect to notice complied with by the insured?

According to a general rule, where notice is required to be given by statute, or contract, and the manner of serving the notice is not prescribed, personal service is intended. There is also an auxiliary rule, likewise general in application, that has the support of authority: "In the absence of custom, statute, estoppel, or express contract stipulation, when a notice, affecting a right, is sought to be served by mail, the service is not effected until the notice comes into the hands of the one to be served, and he acquires knowledge of its contents." [46 C. J. 559.] If the language of the applicable provision of the policy alone be considered, it must be held, in consonance with the rules just mentioned, either that personal service of notice of loss on the insurer at its home office in Springfield, Illinois, is required, or, if the general rule may be sufficiently relaxed to admit of service by mail, that such service is not effected until the notice is actually received and read by a duly authorized agent of the insurer at its home office.

But the rules just referred to are merely rules of construction—at least when applied to contracts. They are not controlling, therefore, where it is manifest from the instrument as a whole that the intention of the parties would be thwarted, rather than given effect, by their application. A more important rule in the construction of contracts is that the interpretation must be upon the entire instrument, and not merely upon disjointed or particular parts of it. "The whole context is to be considered in ascertaining the intention of the parties, even though the immediate object of inquiry is the meaning of an isolated clause." [6 R. C. L. 837, sec. 227.]

The policy contains five analogous provisions respecting notice: (1) In case of loss, the insured shall give "*immediate* written notice" to the insurer "at its home office in Springfield, Illinois;" (2) in case of theft, the assured shall *immediately* give "written and telegraphic notice" to the insurer at its home office, etc.; (3)

if suit is brought to enforce a claim, the assured shall *immediately* forward "by registered mail" the summons and other process; (4) if the assured wishes to cancel his policy, he may do so by giving "written notice" to the insurer at its home office; and (5) if the insurer desires to cancel a policy, it may do so by giving five days' prior notice thereof, such notice to be sent by registered mail to the "last known address" of the assured as shown by its records. (*Emphasis ours.*) In two instances the notices are required to be sent by registered mail, and in one a telegraphic notice in addition to a written notice is provided for. When these provisions are read and considered together, in connection! with the character of the business in which appellant was engaged, its policy holders being scattered all over the country and the great majority of them living and using their motor vehicles in places remote from appellant's home office, it is clear that personal service of none of the notices mentioned was contemplated by the parties. Notice by mail must therefore have been intended, and such is the clear implication. [Beakes v. Da Cunha, 126 N. Y. 293.] What is implied in the policy is as much a part of the contract as though expressly written therein. The United States Mail being then the contract medium through which notice of loss was to be communicated by the insured to the insurer, it follows that, if the officers of the Bus Company mailed such a notice to appellant, on July 6th, as testified by them, the requirement of the policy with respect to the giving of notice was complied with by the insured. [13 C. J. 300.] And we so find and hold.

In view of the conclusions reached the judgment of the circuit court should be affirmed. It is so ordered. All concur.