TRAVELERS INDEMNITY CO., a body
corporate of the State of Connecticut

v.

ROSEDALE PASSENGER LINES, INC.,
a body corporate of the State of
Maryland.

Civ. No. 19459.

United States District Court,
D. Maryland.

March 30, 1970.

Joseph H. Young and Paul V. Niemeyer, Baltimore, Md., for plaintiff.

William F. Mosner, Thomas G. Bodie, and Power & Mosner, Towson, Md., for defendant.

FRANK A. KAUFMAN, District Judge.

On December 14, 1964, Frances Renshaw, while a passenger on a bus operated by defendant Rosedale Passenger Lines, Inc. (Rosedale), a Maryland corporation, was injured. Thereafter, Mrs. Renshaw and her husband filed a claim with Rosedale, alleging that Rosedale was liable for injuries suffered by Mrs. Renshaw and for loss of consortium suffered by her husband. A form in connection with that claim was completed by Rosedale's Treasurer and Office Manager, J. George Ludwig, and mailed by Rosedale to its insurer, Travelers Indemnity Company (Travelers), a Connecticut corporation, plaintiff herein, and duly received by the latter. Thereafter, there were discussions between Richard R. Beauchemin, Esq., attorney for the Renshaws, and several adjusters of one of Travelers' Baltimore offices. Beauchemin was asked for a great deal of detail concerning medicals and special damages and was given indications by Travelers that the claim would be settled. However, subsequently, he was notified by Travelers in April, 1966 that liability, except for medical payments, was denied.

On July 10, 1967, the Renshaws filed suit in the Baltimore City Court against Rosedale. Service was made on July 12, 1967 on Rosedale and accepted by Ludwig, a proper officer of Rosedale upon whom service was authorized to be made.

Ludwig testified that on July 14, 1967, he personally typed the following letter and placed it in an envelope, stamped it

and put it in a mailbox addressed to Travelers at its Baltimore office:

July 14, 1967

Travelers Ins. Co.
501 St. Paul Pl.
Balto. Md. 21202
Gentlemen:

Enclosed you will find suit papers in accident of Renshaw and one of our vehicles on Dec. 14, 1964.

Sincerely,

Rosedale Passenger Lines, Inc.

Ludwig further testified that he kept the suit papers on his office desk between the time of service on July 12, 1967 and the time he mailed them with the aforesaid covering letter at the end of the day on July 14, 1967; that the lady employee at Rosedale who usually took care of such typing had left the Rosedale office for the day and was not expected to return until after her vacation at the end of the following week; and that he sat down at the typewriter, as he did occasionally in 1967 and still does from time to time, and typed the letter in order to be able to forward the suit papers that afternoon to Travelers. The carbon copy of the said covering letter shows no initials of either its author or of its typist in the lower lefthand corner. Other similar letters, forwarding suit papers in 1967 to Travelers in other cases in which claims were made against Rosedale, show the initials in the lower left hand corner of both author and typist.

Coincidentally, on that same day of July 14, 1967, Travelers closed its file in Baltimore in connection with the Rosedale claim and sent that file to its home office in Hartford, Connecticut, retaining in Baltimore only a so-called "backer." The latter is a sheet on which events subsequent to the closing of a file are set forth and on which there appears the number of the file.

Thomas J. Bracken, Esq., an attorney, who was employed by Travelers at the time as an insurance supervisor, testified that the file was under his supervision on July 14, 1967; that it was closed because there had been no activity in connection with it since he had written on behalf of Travelers to Beauchemin in April, 1966, informing Beauchemin that Travelers denied liability; and that in some instances it was the policy of the Baltimore office of Travelers not to wait until the three-year Maryland limitations period had run before closing a local Baltimore file which seemed inactive.

Beauchemin testified that he checked the Baltimore City Court records after the return date in August, 1967 and ascertained that no answer had yet been filed, that he did nothing further at that time, but that in September, after the September return date had passed, he again checked the court records and ascertained that no answer had been filed. He then caused a judgment by default to be entered against Rosedale on behalf of the Renshaws, waited until the passage of the thirty-day period to set the same aside as provided by 9B Md.Ann.Code, Rule 625 (1963 Repl.Vol.),[1] and then asked the Assignment Commissioner of the Supreme Bench of Baltimore City, James Campbell, to calendar an inquisition. Beauchemin testified that he is certain that he waited until thirty days had elapsed after the entry of the default judgment on September 25, 1967 before he had any conversations whatsoever with anyone in the Baltimore City Courthouse concerning the calendaring of the inquisition hearing. Beauchemin also testified that he at no time notified anyone at Rosedale or Travelers concerning the entry of the default judgment or the calendaring of the inquisition, that he has never at any other time during his legal career so taken any other default judgment, and that he took such action in this instance because he believed that Travelers had not been fair in leading him to expect a settlement offer and then in declining liability *in toto* except for medical payments.

1. *See* n. 9, *infra.*

On October 24, 1967, Travelers' home office in Hartford returned its file involving the Renshaw claim against Rosedale to Bracken at its Baltimore Claim Department, after Bracken telephoned a request for the file to the home office. That request was made because Bracken received, on October 24, 1967, a telephone call from Joseph H. Young, Esq., of Messrs. Piper & Marbury, attorneys in Baltimore for Travelers. During that conversation, Bracken testified, Young told him that he had had a call from someone at the Baltimore City Court and that an inquisition was scheduled to take place soon in connection with a suit filed by the Renshaws against Rosedale. Bracken's recollection is that he received that call during the afternoon hours of October 24, 1967, that he immediately telephoned to Travelers' home office at Hartford, and that the home office sent the file to him on that same day.

Young testified that he received a telephone call from the Assignment Commissioner, Mr. Campbell, informing him that an inquisition was scheduled in connection with a case brought by the Renshaws against Rosedale and that Campbell stated he was calling Young because he knew that Young's firm represented Rosedale in cases of the type involved. Young testified that he did not know the exact date upon which he had received the call from Campbell but that he did know that he telephoned Bracken forthwith after receiving Campbell's call.

The records of the Travelers Claim Department in Baltimore show that it received the Rosedale-Renshaw claim file from its home office in Hartford on October 26, 1967. October 26th was a Friday. On Tuesday, October 30, 1967, Bracken addressed the following letter to Rosedale:

October 30, 1967

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
SPECIAL DELIVERY

Rosedale Passenger Lines, Inc.
8030 Philadelphia Road
Mt. Hayes Post Office
Baltimore County, Maryland

B—909982
Rosedale Passenger Lines, Inc.
Re: Frances Renshaw
D/L: December 14, 1964

Gentlemen:

Please be advised that this office recently learned that suit papers have been filed in the above captioned matter, and that default judgment has been obtained. Information further indicates that this matter will be scheduled for inquisition on November 1, 1967. This advice is forwarded in order that you may take such action as you may deem necessary.

Very truly yours,

THE TRAVELERS INDEMNITY CO.

Thomas J. Bracken,
Liability Supervisor

TJB :pl

On receipt of that letter, Ludwig, on October 31, 1967, telephoned to Bracken and informed Bracken that he had no knowledge of any Renshaw suit papers

having been served upon Rosedale. Bracken requested Ludwig to put that statement in writing and Ludwig did so in a letter dated October 31, 1967. That letter reads as follows:

October 31, 1967

The Travelers,
501 St. Paul Place,
Baltimore, Md. 21202

Attention: Mr. Thomas J. Bracken, Liability Supervisor

Re: B–909982
Rosedale Passenger Lines, Inc.
Frances Renshaw
D/L: December 14, 1964

Please be advised that this office had no knowledge of suit filed in the above captioned matter. We received no suit papers. We also contacted the driver, George L. Bowers, and he advised he had received no papers either.

Yours very truly,

ROSEDALE PASSENGER LINES, INC.

J. G. Ludwig, Office Mgr.

JGL:CS

—————◆—————

After receiving Ludwig's October 31st letter, Bracken telephoned to Young, who advised Bracken that Travelers should "sit tight." Bracken made a notation to this effect in his own handwriting on Ludwig's October 31st letter.

On November 1, 1967, an inquisition was held before a jury in connection with the Renshaws' default judgment against Rosedale. Neither Rosedale nor Travelers was represented at that inquisition. The jury rendered verdicts of $10,000 for Mrs. Renshaw and $1500 for Mr. Renshaw. Thereafter, Beauchemin wrote to Travelers and Rosedale and informed them of that judgment, whereupon both Travelers and Rosedale ascertained that the records of the Baltimore City Court showed that service had been made on Rosedale on July 12, 1967 in connection with the Renshaw suit. Subsequently, at the request of Rosedale's attorney, William F. Mosner, Esq., Ludwig, during December, 1967, began a search of his files at Rosedale and found in Rosedale's general correspondence file the carbon copy of the letter he had typed and mailed to Travelers on July 14, 1967. Ludwig testified that that letter had been misfiled by mistake and that, when he found it, his memory of the typing and mailing on July 14, 1967 was revived and he realized he had given incorrect statements to Bracken, orally and in writing, on October 31, 1967. No evidence was presented by Rosedale to show why Ludwig was able to uncover the file copy in December, 1967, but was unable so to do on October 31, 1967. Ludwig himself gave no explanation other than to state that names mean very little to him and that on October 31, 1967 he did not recognize the name of Renshaw, even though only three or four suits were filed in a year against Rosedale; and that when he had received Bracken's letter of October 30, 1967, he had checked with the driver of the bus involved and

the driver had stated that no suit papers had been served upon him.[2] But the conclusion is inescapable that had Ludwig searched as carefully on October 31, 1967 as he did a month or so later, he would have found the file copy of his July 14, 1967 letter and Travelers would have had the opportunity to have taken steps on November 1, 1967 to attempt to protect Rosedale's interests in the Renshaw case.

Bracken, and an adjuster for Travelers who had had some connection with the handling of Renshaw claims against Rosedale, testified that there is a central mail room at the Baltimore Claim Department of Travelers; that after the mail comes into that central mail room, it is opened and is routed by the employee who opens the mail to the person who is listed as in charge of the particular claim number; and that there is no record at Travelers of any receipt of (nor did either of them personally see or receive) the July 14th Ludwig letter before December, 1967, or the suit papers served upon Ludwig at any time.

After Beauchemin threatened attachment proceedings in December, 1967, Travelers, upon the advice of its Baltimore attorneys, on January 22, 1968, paid the judgments and court costs, i. e., a total of $11,535.25.

On May 3, 1968, Travelers instituted the within proceedings against Rosedale, alleging diversity of citizenship and asserting that Rosedale breached its obligations to Travelers under the terms of the policy Travelers had issued to Rosedale, in that Rosedale had failed to forward the suit papers filed by the Renshaws, and seeking recovery of the $11,535.25 Travelers paid to the Renshaws.

General Condition 10 of the policy issued by Travelers to Rosedale provides:

10. *Notice of Accident.* When an accident occurs written notice shall be *given* by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses. [Emphasis added.]

General Condition 11 of the policy reads as follows:

11. *Notice of Claim or Suit.* If claim is made or suit is brought against the insured, the insured shall immediately *forward* to the company every demand, notice, summons or other process received by him or his representative. [Emphasis added].

The first sentence of General Condition 12 of that policy provides:

12. *Assistance and Cooperation of the Insured.* The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. * * *

The first paragraph of General Condition 13 states, in part:

13. *Action Against Company.* No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy * * *.

The parties hereto agree that Md.Ann. Code art. 66½, § 131 (1957) and the policy itself required Travelers to pay the Renshaws' judgment and that, as against the Renshaws, any defenses by Travelers based upon lack of notice or other cooperation by Rosedale were unavailable.

An endorsement on the policy issued by Travelers to Rosedale includes the following undertaking by Rosedale:

The policy to which this endorsement is attached is amended to conform with the provisions of Sections

2. The records of the Baltimore City Court show that the case instituted by Beauchemin on behalf of the Renshaws named Rosedale and the driver as defendants, and that service was accomplished upon Rosedale but not upon the driver.

114 to 145 inc., Article 66½ Title "Motor Vehicles," Annotated Code of Maryland, 1954 edition, as amended.

The insured, or any other person covered by the policy, agrees to reimburse the company for any payment made by the company on account of any accident, claims or suit, involving a breach of the terms or conditions of this policy, which payment the company would not have been obligated to make under the provisions of this policy except for the agreement contained in the foregoing paragraph.

Travelers takes the position that the word "forward," as used in Condition 11, is not satisfied until receipt, and that there was no receipt in this case by Travelers. In addition, Travelers attacks the credibility of Ludwig and alleges that neither the letter of July 14, 1967 nor the suit papers were mailed by Rosedale to the Baltimore Claim Department of Travelers. Because the issue of Ludwig's credibility was a most important one in these proceedings, this Court, with the agreement of counsel for both parties, recalled Ludwig to the witness stand, after all testimony had been completed and after counsel had made their closing arguments, and asked him certain additional questions in order to probe more deeply concerning whether or not this Court could rely upon his testimony. Having observed and listened to the testimony of Ludwig, upon direct examination and upon careful and vigorous cross-examination by plaintiff's counsel, as well as to all of the other testimony in the case, and also having considered, for impeachment purposes, the deposition of Ludwig taken by Travelers on February 26, 1969, this Court finds that Ludwig, as well as all of the other witnesses in this case, testified truthfully to the best of their recollections. It is possible that Ludwig wrote the July 14, 1967 letter and then failed to place it in an envelope, or to stamp the envelope, or to mail the stamped envelope, or that he misaddressed the envelope. However, the address on the file copy of the letter was correct, and Ludwig testified positively that he himself had put the letter in an envelope, stamped it and placed it in a mail box at a corner near the Rosedale office, and that the envelope had a return address on it.

Accordingly, this Court finds that Ludwig mailed the said papers with a covering letter to Travelers on July 14, 1967. Because of the view which this Court takes of the meaning of Condition 11 of the policy in this case, it is not necessary for this Court to make any finding of fact as to whether Travelers in fact received the July 14th Ludwig mailing.[3]

The first question of law which arises in this case is whether the use of the word "forward" in Condition 11 of the policy requires receipt as well as mailing. The use of the words "shall be given" in Condition 10 relating to "Notice of Accident" is to be contrasted with the use of the word "forward" in Condition 11 relating to "Notice of Claim or Suit." Similar policy language has been interpreted in a few other cases.

For example, in Baldwin v. Fidelity Phenix Fire Ins. Co. of N. Y., 260 F.2d 951 (6th Cir. 1958), an automobile liability insurance policy required that "[w]hen an accident occurs written notice shall be given" to the company. After concluding (at 953) that a jury's finding of non-receipt was supported by the evidence in the case and that the presumption that "mail delivered to the United States postal service is duly received" was rebutted by the fact that the letter had been mailed with an incomplete address, the Court held that notice was not effective until received because "the term 'written notice shall be given' carries with it the implication of receipt or delivery"; that Webster's New International Dictionary, 2d Ed., states that "One meaning of the verb 'give' is * * 'to deliver or transfer; to * * * hand over'" (at 953–954); that Heimbecher v. Johnson, 258 Wis. 200, 45 N.W.2d 610

3. *But see* n. 10, *infra.*

(1951), is "distinguishable" because, *inter alia,* the policy provisions therein were ambiguous, and that (260 F.2d at 954):

   \* \* \* Also, both logic and a realistic appraisal of the situations necessitating automobile liability insurance contracts compel the conclusion that the term "written notice shall be given" under the policy provisions herein involved requires more than a mere forwarding of notice by unregistered mail. The insurer of automobile liability is entitled to actual notice in order to investigate the accident, to secure witnesses while the accident is fresh in their minds, and to make ready to defend the case. This is what the insurance company agreed to but was unable to perform, due to the lack of notice and cooperation on the part of the insured.

In Meierdierck v. Miller, 394 Pa. 484, 147 A.2d 406 (1959), a policy which required that written notice of accident "shall be given" was construed to require mailing, but not receipt and a jury instruction that the insured's letter to the insurance company had to be both mailed and received in order for the jury to find that notice had been given was held erroneous.[4]

In Schott v. Continental Auto Ins. Underwriters, 326 Mo. 92, 31 S.W.2d 7 (1930), cited by the Sixth Circuit in its *Baldwin* opinion as contrary to the decision reached therein but as "distinguishable on the facts" (*Baldwin* 260 F.2d at

954), the word "give" was construed as requiring mailing without proof of receipt.

In this case, Travelers received notice of the accident, investigated the accident, took statements from the claimant and Rosedale's driver involved in the accident, negotiated with the claimant's attorney, and denied liability except for claimant's medical expenses. In *Baldwin,* the insurer had no notice of the accident nor any opportunity to investigate, to locate witnesses, and to prepare a defense to the suit.[5]

Webster's New International Dictionary (3d Ed., 1967) defines the verb "forward" in part, as follows:

   2. a: To send forward: send toward the place of destination: TRANSMIT (I shall *forward* the bill of lading this afternoon) (we will *forward* the goods on receipt of your check) b: to send or ship onward from an intermediate post or station in transit (as from one carrier to another or from the post office of address to another \* \* \*.

The Oxford Universal Dictionary (3d Ed., 1944, as reprinted with corrections and revised addenda, 1955), defines the verb "forward" in part, as follows:

   To send to an ulterior destination. In *Comm.* after loosely, to dispatch. 1757.

After defining "forward" when used as an adverb, adjective or noun, Random House Dictionary of the English Language (Unabridged Ed., 1966) states, in

---

4. "In this type of insurance contract the requirement that written notice be given implies the use of the mails in forwarding the notice. The responsibility of the assured and the responsibility of an offeree tendering an acceptance are similar. Where the use of the mails as a means of acceptance is authorized or implied from the surrounding circumstances, the acceptance is complete by posting the letter in normal mail channels, without more. \* \* \* There is no requirement of receipt unless expressly provided for. Therefore, when the court charged that the jury must find both posting and receipt error was made. Clearly, the assured was not required to convince the

jury by a fair preponderance of the evidence that receipt had been accomplished." [Meierdierck v. Miller, 147 A.2d *supra* at 408.]

5. The requirement that after an accident the insured "render[s] a statement to the company" was held in Manufacturers' & Merchants' Ins. Co. v. Zeitinger, 168 Ill. 286, 48 N.E. 179 (1897), to require mailing but not receipt.

   The word "forward" discussed *infra* in the body of this opinion, was present in the policies involved in *Schott* and *Zeitinger,* without any significance being attached thereto under the facts in the controversies at issue therein.

part, as follows, with regard to the verb "forward":

> To send forward; transmit, esp. to a new address; *to forward a letter.*

In Campbell v. Continental Casualty Co. of Chicago, 170 F.2d 669 (8th Cir. 1948), the policy in issue contained the essential provisions of Conditions 11, 12 and 13 of the policy involved in this case. Indeed, the words of Condition 12 of the Travelers-Rosedale policy appear verbatim in the policy in the *Campbell* case. That case raised the question of whether the admitted lack of forwarding by the insured of the suit papers was rendered non-fatal by the fact that the driver of the truck, a co-defendant, had forwarded the suit papers served upon him. No question of mailing or receipt was involved in *Campbell*.[6]

■ In the absence of any known authority, Maryland or otherwise, this Court holds in this case that the dictionary meaning of "forward" requires transmission but not receipt. In so holding, this Court notes that the Travelers policy uses the word "given" in Condition 10 and the word "forward" in Condition 11; that whether those two different words were so employed inadvertently or purposely, the meaning of "forward" is clear and unambiguous; that it may well be, as the Sixth Circuit indicated in *Baldwin*, essential for an insurance company to *receive notice* of an accident from its insured, because other-

wise it would often have no way of learning of the accident; but that once an insurance company has notice of an accident, it usually will be informed of the filing of a suit, even if the suit papers are lost in mailing.[7] Accordingly, this Court concludes that the mailing by Rosedale in this case satisfied the forwarding obligation in Condition 11.

■ The question remains as to whether Rosedale is estopped to assert that it forwarded, through Ludwig, the suit papers to Travelers on July 14, 1967, in view of Ludwig's oral and written mistaken statements of October 31, 1967—statements which Ludwig, who was not inexperienced in connection with automobile accident suits, rather clearly understood would be relied upon by Travelers. In fact, Travelers did rely upon the information furnished on October 31, 1967 by Ludwig. Rosedale contends that Travelers, in the exercise of good faith and reasonable care,[8] should (1) after October 24, 1967 and prior to the inquisition on November 1, 1967, have checked the records in the Baltimore City Court and explored further against the possibility that Ludwig's information was incorrect, or (2) have sought postponement of the inquisition or at least have attended it on behalf of Rosedale under a reservation of rights letter, or (3) after the inquisition, have moved within, and perhaps after, the thirty-day period provided by Rule 625 of the Maryland Rules

---

6. Under the facts in *Campbell*, the Eighth Circuit affirmed the trial court's holding that the insured, against whom a default judgment had been taken and by whom such judgment had been satisfied, was not entitled to recover from his insurance company to whom he had not forwarded the suit papers.

7. In Schott v. Continental Auto Ins. Underwriters, *supra*, the policy required suit papers to be forwarded by registered mail. Travelers could have so provided in Condition 11 if it had so desired.

8. *Cf.* State Farm Mut. Auto Ins. Co. v. White, 248 Md. 324, 236 A.2d 269

(1967); Gaskill v. Preferred Risk Mut. Ins. Co., 251 F.Supp. 66 (D.Md.1966) (Thomsen, C. J.), aff'd, 371 F.2d 792 (1967), involving failures of an automobile liability insurance carrier to settle suits against insureds within the limits of the policy. Rosedale contends that since Travelers had assumed control of the controversy after the Renshaws made claim, Travelers had a duty to follow through more than it did in this case. But Travelers, after it learned of the default judgment, did follow through and contacted Ludwig and thereafter reasonably relied on what Ludwig stated were the facts.

of Civil Procedure to seek revision of the judgment on grounds of mistake.[9] But the hard answer is that Rosedale could have itself investigated the court records on October 31, 1967, or attended the inquisition on November 1, 1967, or investigated thereafter and sought revision under Rule 625. While an insurer undoubtedly has the duty of diligently looking after the interests of its insured, the language of the insurance instrument Travelers issued to Rosedale "has [not] imposed on the insurer, merely because it knows that an insured has been named as a defendant in an action, the sentry duty of tracking back and forth to the court house to keep a check on if or when [it] may be served with process." Campbell v. Continental Casualty Co. of Chicago, *supra* 170 F.2d at 671. Whether public policy and general conditions of justice require otherwise in a case in which the insured is unsophisticated about and unknowing of procedures concerning civil suits growing out of automobile accidents and of the defense thereof by insurance companies poses a question which this Court need not resolve herein. Rosedale—and Ludwig—do not fall within that class. There would seem no more reason why Rosedale should not have protected itself against possible error in the information Ludwig, without a careful check of Rosedale's files forwarded to Bracken on October 31, 1967—by investigating further in Rosedale's own files or at the courthouse, by contacting Beauchemin as attorney in the suit instituted by the Renshaws, by attending the inquisition on

November 1, 1967, and/or by thereafter seeking relief under Rule 625—than there was for Travelers to take one or more of those precautions. In the best of all possible worlds, Travelers might perhaps have acted more like its brother's keeper than it did in this case. But Rosedale, having led Travelers astray by Ludwig's failure correctly to check Rosedale's files after receiving a warning and a request from Bracken on October 30, 1967, in the careful way he later checked those files in December, 1967 at the request of Rosedale's own attorney, can hardly be heard to complain of Travelers' reliance upon the information Travelers received from Ludwig, and Travelers' consequent non-action. In this connection, Rosedale's affirmative contractual obligation of assistance and cooperation under Condition 12 of the policy issued to it by Travelers is noted.

All of the elements establishing an estoppel against Rosedale—a negligent misstatement and omission of material facts by Rosedale under conditions which either did cause, or should have caused, Ludwig to realize that Travelers would rely on Ludwig's statement that Rosedale had not in fact been served in the Renshaw case, followed by reliance in good faith thereon by Travelers—are present herein. *Cf.* Sly v. United States, 220 F.2d 212 (7th Cir. 1955), and cases cited in 31 C.J.S. Estoppel § 78, p. 456. Therefore, Rosedale is estopped to assert that, contrary to Ludwig's oral and written statements of October 31, 1967 to Bracken, Rosedale in fact forwarded the suit papers to Travelers on July 14, 1967.[10]

---

9. 9B Md.Ann.Code, Rule 625 (1963 Repl. Vol.) provides:

> For a period of thirty days after the entry of a judgment, or thereafter pursuant to motion filed within such period, the court shall have revisory power and control over such judgment. After the expiration of such period the court shall have revisory power and control over such judgment, only in case of fraud, mistake or irregularity.

10. Ludwig's mailing on July 14, 1967 raises a presumption of receipt by Travelers. *See, e. g.,* Baldwin v. Fidelity Phenix Fire Ins. Co. of N. Y., *supra*

260 F.2d at 953. However, this Court finds that Travelers' procedures for handling of suit papers mailed to it in Baltimore were carefully devised and followed in 1967 and that there is no evidence in this case that Bracken, or anyone at Travelers, in October, 1967, had any actual knowledge of the service of the Renshaw suit papers upon Rosedale. Under those conditions, this Court concludes that it would be inequitable to permit Rosedale to establish mailing and presumptive receipt, and to relieve Rosedale of the consequences of Ludwig's negligent conduct on October 31, 1967.

Travelers is thus entitled to judgment herein.

Judgment is hereby entered in favor of Travelers against Rosedale in the sum of $11,535.25 with interest at the rate of 6% per annum from January 22, 1968. Court costs of this proceeding are to be borne by Rosedale.