Ninian M. EDWARDS, Joseph P. Logan, and Martin Schiff, Jr., Respondents,

v.

ST. LOUIS COUNTY, Missouri, a Body Corporate and Politic, Lawrence K. Roos, Supervisor of St. Louis County, Hugh Scott, Jr., John O'Hara, Maurice W. Osborn, Gerald A. Rimmell, Brainerd W. LaTourette, Jr., Boris M. Martin, and Maurice L. Stewart, as Members and Constituting the County Council of St. Louis County, Missouri, and Thomas C. Dunne, Treasurer of St. Louis County, Missouri, Appellants.

No. 53639.

Supreme Court of Missouri,
En Banc.

July 8, 1968.

Ninian M. Edwards, Martin Schiff, Jr., Edwards & Schiff, Joseph P. Logan, Clayton, for respondents.

Joseph B. Moore, St. Louis County Counselor, Morton I. Golder, Associate County Counselor, Patrick M. Fiandaca, II, Asst. County Counselor, Clayton, for appellants.

John E. Kelley, County Counselor, Guy Rice, Asst. County Counselor, Robert B. Fizzell, Robert B. Fizzell, Jr., Richard E. Petrie, Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, for amicus curiae.

EAGER, Judge.

The question here is, simply stated, which of two conflicting statutes controls the rate of interest which counties may fix and pay on general obligation bonds. The suit is one brought by taxpayers for a declaratory judgment. No facts are in dispute. The County Council of St. Louis County adopted the necessary resolutions for the publication of notice and the sale of one $1,000 public improvement bond (out of an authorized total of $26,509,000 previously approved by the voters) to bear interest at a rate "not exceeding six percent (6%) per annum." The procedure is conceded to be valid in all particulars except that plaintiffs have alleged and contend here that the issuance of such bonds at any rate of interest exceeding 4% ·is void and illegal, and to that extent the whole attempt is a nullity. They prayed declarations accordingly and a permanent injunction. Defendants denied all allegations of invalidity, asserted their right to issue bonds at any rate not exceeding 6%, and prayed a declaratory judgment to that effect. The trial court found for the plaintiffs and enjoined the sale and advertisement upon the theory that any rate of interest in excess of 4% was illegal. We shall explain the controverted theories in more detail. Jackson County was permitted to file a brief as amicus curiae, it having been authorized by vote of the people to issue general obligation bonds for public improvements in the amount of $102,385,000, of which $95,385,000 is still unissued.

It will be necessary to state the conflicting statutory history in some detail. Section 108.080, RSMo 1959, V.A.M.S., is as follows:

"Such bonds shall be issued in denominations of one hundred dollars or some multiple thereof, shall be payable to bearer, not later than twenty years from their date, shall bear interest from their date at a rate not exceeding four per cent per annum, payable annually or semiannually, such interest payments to be evidenced by annexed coupons, and said bonds shall not be sold for less than ninety-five per cent of the face value thereof. Such bonds shall specify the depositary or place where interest and principal payments will be made and shall be signed by the presiding justice of the county court and attested by the signature of the clerk of the county court with the seal of his office affixed thereto. The interest coupons may be executed by affixing thereon the facsimile signature of said clerk."

This section follows several previous sections which prescribe the methods of procedure and limitations upon the issuance of bonds by *counties*. The purposes for which such bonds may be issued are not specified.

The first antecedent of this statute was enacted in 1879 and appeared in R.S.Mo. 1879 as § 6813. It provided for the issuance of bonds by counties at a rate of interest not exceeding 6%; a preceding section (6808) limited the purposes to the building of court houses or jails. In 1881 (R.S.Mo. 1889, §§ 852 and 857) these statutes were amended in respects not material here. In 1919 the purposes were expanded

to include County Public Hospitals. Laws 1919, pp. 172–175. The rate of interest remained at "not exceeding 6%." In 1921 the purposes were slightly expanded (Laws 1921, p. 162). The section now in question appeared in the 1939 Revised Statutes as § 3297, its purposes still limited to building, repairing or rebuilding a court house or jail, and establishing a public county hospital, with interest "not exceeding six per centum." In 1945 (Laws 1945, p. 597, RSMo 1949, § 108.010, § 108.080) the legislature re-enacted these sections, with no specific limitation on the purposes for which the bonds might be issued, but it thereby limited the interest rate to *"not exceeding four per cent."* This was the first time that a maximum rate of less than 6% had been fixed. Section 108.080 has continued to date in this form, and plaintiffs rely solely upon it as their authority to establish the illegality of the resolutions of St. Louis County.

We now consider the statute upon which defendants rely. It is § 108.170 as re-enacted in 1965 (Laws 1965, pp. 232–233, Cum.Supp.1967). At that time the existing section was repealed and the new one enacted in its place. The only substantive change then made was one concerning the nonapplicability of the section to certain bonds of school districts. As thus re-enacted in 1965, the section is as follows:

"BOND ISSUES—MAXIMUM INTEREST RATE—MINIMUM SALE PRICE—EXCEPTIONS.—Any and all bonds hereafter authorized to be issued under any law of this state by any county, city, town, village, school district, or other municipality, political subdivision or district of this state, except as otherwise provided in sections 164.121 to 164.301, RSMo, for school districts, may bear interest at a rate not exceeding six per cent per annum, and may be sold, at any sale pursuant to any law applicable thereto, at the best price obtainable, not less than ninety-five per cent of the par value thereof, anything in any proceedings heretofore had authorizing such bonds or in any law of this state to the contrary notwithstanding."

This section originated in 1921, Laws 1921, pp. 169–170; it was then enacted with an emergency clause stating:

"The fact that many counties and municipalities within the state are now unable to sell bonds and cannot do so without the authority granted in this act creates an emergency within the meaning of the Constitution of the state, and therefore this act shall take effect and be in force from and after its passage and approval."

The asserted difficulty may have arisen from the inability of subdivisions other than counties to sell their bonds, or from the restricted purposes for which counties were permitted to issue bonds. We have been unable to find any history concerning the background or purpose of this 1921 enactment. From 1921 until 1945, *both* statutes provided for a maximum rate of interest of not exceeding 6%. In the extra session of 1921 an amendment was made excluding certain school district bonds from the applicability of the section just enacted. That amendment also carried an emergency clause. This section (§ 108.170) has been continued in our statutes, substantially intact, into the 1959 Revision, with certain changes in the references to bonds of school districts. It has appeared in Articles or Chapters of differing titles as, 1939, —"Miscellaneous Provisions—Determining Legality of Bonds"; 1949,—"Bond Issues, Miscellaneous Provisions"; the 1959 title is the same as 1949. It is now contained in the same Chapter (108) as § 108.080 upon which plaintiffs rely for their limitation of interest to 4%. Between the two sections appear several others dealing with specific forms or kinds of county bonds, including refunding bonds. Section 108.-170 is followed by other sections providing regulations for the handling of the proceeds of the bonds, purchases of such bonds by the political subdivisions, registration of the bonds, etc. From 1945 a

conflict has thus existed in the interest rate permitted on county bonds, and, so far as we can find, without any expressed concern. At all times § 108.170 has specifically included counties; in fact, "county" is the first-named political subdivision. It seems apparent that an existing economic condition in which it is now difficult, if not impossible, to sell such bonds at 4% interest unless discounted, has given rise to this first controversy.

The position of defendants and of Jackson County is, substantially: that a legislative intent to permit interest up to 6% on county bonds is demonstrated by the repeal and re-enactment of § 108.170 in 1965 as the latest word on the subject, and that § 108.080 was repealed by implication in the enactment of that 1965 statute; and also, that the words contained in § 108.170, "anything in any proceedings heretofore had authorizing such bonds or in any law of this state to the contrary notwithstanding," particularly indicate an intent to prescribe one single interest rate for all bonds of political subdivisions. Plaintiffs say, in substance: that § 108.080 is part of a special act dealing with counties, and that such a law is not repealed by implication in the enactment or re-enactment of a general law including the same subject matter; that there is a presumption against repeal by implication; that the re-enactment was in reality merely a continuation of the existing § 108.170 in view of our § 1.120 which provides that: "The provisions of any law or statute which is re-enacted, amended or revised, so far as they are the same as those of prior laws, shall be construed as a continuation of such laws and not as new enactments"; and that the statutes may be construed together by disregarding the application of § 108.170 to counties, thus leaving the special statute as an exception to the general statute.

■ This situation brings into play sundry doctrines or theories of statutory construction, some of which are in conflict on these facts. Some have already been alluded to, but we repeat here the principal ones involved, with certain citations. The repeal of a so-called special or local statute by implication through the enactment of a later general statute is not generally favored. Sutherland Statutory Construction, 3rd Ed., § 2011; Collins v. Twellman, 344 Mo. 330, 126 S.W.2d 231; State v. Ludwig, Mo.Banc, 322 S.W.2d 841; In re Thomas, Mo.App., 306 S.W.2d 336; and it is sometimes said that there is a presumption against such a repeal. State v. Oswald, Mo., 306 S.W.2d 559. The re-enactment of a statute, insofar as it is the same as the prior law, is to be construed as a continuation of the prior law. § 1.120, RSMo 1959, V.A.M.S. Statutes which appear to be conflicting should be harmonized, if at all possible, so that they may stand together. Sutherland, supra, § 2014; Ludwig, supra. But the last act of the legislature, if completely repugnant to a prior act, must be construed as repealing the prior act by implication, to the extent of such conflict, and is deemed to express the intent of the legislature. Sutherland, supra, § 2012; In re Thomas, supra, 306 S.W.2d 336; State ex rel. City of Republic v. Smith, 345 Mo. 1158, 139 S.W.2d 929; City of Kirkwood v. Allen, Mo.Banc, 399 S.W.2d 30; State ex rel. Mo. Pac. Ry. Co. v. Public Service Commission of Missouri, 275 Mo. 60, 204 S.W. 395; Schott v. Continental Auto Ins. Underwriters, 326 Mo. 92, 31 S.W.2d 7; Ferch v. People, 101 Colo. 471, 74 P.2d 712; State v. Karsunky, 197 Wash. 87, 84 P.2d 390; State v. London, 156 Me. 123, 162 A.2d 150; People ex rel. Dickey v. Southern Ry. Co., 17 Ill.2d 550, 162 N.E.2d 417. And the principle is applied even to the extent of the repeal (pro tanto) of a special statute by a later general statute if there is such total conflict that the two cannot stand together, and the legislative intent is fairly shown. Sutherland, supra, § 2021; Schott v. Continental Auto Ins. Underwriters, supra, 31 S.W.2d 7; In re Thomas, supra, 306 S.W.2d 336; People ex rel. Lucas v. Warden, 174 Misc. 494, 21 N. Y.S.2d 462; People ex rel. v. Board of Com'rs of Cook County, 345 Ill. 172, 177

N.E. 705; Herrett Trucking Co. et al. v. Washington Pub. Serv. Com'n, 58 Wash.2d 542, 364 P.2d 505; Olsen v. Gee et al., 94 R.I. 433, 181 A.2d 442; Connor v. State, 275 Ala. 230, 153 So.2d 787; Union Cemetery v. City of Milwaukee, 13 Wis.2d 64, 108 N.W.2d 180; Hensley v. Bethesda Sheet Metal Company, 230 Md. 556, 188 A.2d 290; Commonwealth ex rel. Bard v. Delaware Division Canal Co., 332 Pa. 53, 1 A.2d 672. In the case of In re Thomas, supra, at 306 S.W.2d loc. cit. 337, the court said: "Ordinarily, a special or local law is not to be considered repealed by a general law upon the subject, State v. Fitzporter, 17 Mo.App. 271, but that rule is inapplicable where, as in this instance, the two are in irreconcilable conflict, or are patently inconsistent, O'Malley v. Prudential Casualty & Surety Co., 230 Mo.App. 935, 80 S.W.2d 896, and the legislative intention to supersede the local law and to prescribe one single authoritative rule which shall govern in all cases is made clearly manifest. State v. Bennett, 102 Mo. 356, 14 S. W. 865, 10 L.R.A. 717; State ex rel. McDaniel v. Schramm, 272 Mo. 541, loc. cit. 564, 199 S.W. 194."

 In all these diverse and sometimes conflicting rules the ultimate guide is the intent of the legislature; the other rules of construction may be considered merely as aids in reaching that result; and the purpose and object of the legislation should not be lost sight of. It is true that § 108.080 may be considered as a special act, since it and various accompanying sections are applicable to counties only. At the same time, however, and throughout its entire legislative history, § 108.170 has specifically included counties, and that express designation was carried into its latest re-enactment in 1965. The rates of interest provided in the two statutes are totally re-pugnant, and cannot, by any possible interpretation, be harmonized. While the re-enactment of § 108.170 in 1965 should be considered as a continuation of the prior act, it was nevertheless a current expression of the legislature on the subject, and we rule that an intent was then disclosed to permit counties, as well as other political subdivisions, to issue bonds at 6% interest rates. In other words, we rule that the re-enactment of § 108.170 in 1965 did by implication repeal the limitation of interest to 4%, as expressed in § 108.080. Otherwise § 108.080 may stand as written; the only change will be in the permitted rate of interest. The presence in § 108.170 of the words: "anything * * * in any law of this state to the contrary notwithstanding," confirms us in this view. That expression was not new in the re-enactment, but its inclusion, then and previously, is some evidence of an intent to make the section controlling as to all political subdivisions. If, in fact, the intent was otherwise the legislature can easily remedy the situation at its next session. The purpose of all such legislation was to aid the counties, and other political subdivisions, in the issuance of bonds for public improvements; and, in the event of a complete repugnancy in statutes such as we have here, we should certainly not presume an intent which would severely handicap that action.

The judgment of the trial court is reversed and the cause is remanded with directions to enter a declaratory judgment holding valid the resolutions adopted by the St. Louis County Council and the issuance, advertising and sale of the bond in question at a rate of interest not exceeding 6% per annum under the provisions of § 108.170 aforesaid.

All concur.