Dear Governor Bond:
You have requested an opinion involving legal questions arising out of a proposal presently under consideration for the advance refunding of $43,445,000 State Office Building Special Obligation Bonds, Series A 1981 (the "Outstanding Bonds") of the Board of Public Buildings of the State of Missouri (the "Board"). Interest rates presently available to the Board make it desirable to implement an advance refunding plan at this time. Based on current interest rates, implementation of an advance refunding could result in substantial savings to the Board over the life of the bond issue.
Advance refunding is a financial tool by which the Board may substitute a new bond issue (the "Refunding Bonds") for the Outstanding Bonds in advance of the first call date. The proceeds from the sale of the Refunding Bonds, together with other available moneys, would be used to purchase government securities to be deposited in an escrow account. The principal of and the interest earned on the government securities would be used to meet all payments of principal and interest on the Outstanding Bonds when due. The Refunding Bonds would be secured by the revenues presently pledged to the payment of the Outstanding Bonds. Under the advance refunding proposal presently being considered, the Board could save approximately $750,000 in interest cost over the life of the Outstanding Bonds.
You have asked for a legal opinion on several questions regarding the authority of the Board to issue refunding bonds and the statutory restrictions imposed on the issuance and terms of such bonds.
Section 8.430, RSMo 1978, authorizes the Board to issue refunding bonds. This section provides in part:
 1. The revenue bonds issued pursuant to the provisions of sections 8.370 to 8.450 may be refunded, in whole or in part, in any of the following circumstances:
 (1) When any such bonds have by their terms become due and payable and there are not sufficient funds in the interest and sinking fund provided for their payment to pay such bonds and the interest thereon;
 (2) When any such bonds are by their terms callable for payment and redemption in advance of their date of maturity and are duly called for payment and redemption;
 (3) When any such bonds are voluntarily surrendered by the holder or holders thereof for exchange for refunding bonds.
 2. For the purpose of refunding any bonds issued hereunder, including refunding bonds, the board may make and issue refunding bonds in the amount necessary to pay off and redeem the bonds to be refunded together with unpaid and past due interest thereon and any premium which may be due under the terms of the bonds, together also with the cost of issuing the refunding bonds, and may sell the same in like manner as is herein provided for the sale of revenue bonds, and with the proceeds thereof pay off, redeem and cancel the old bonds and coupons that have matured, or the bonds that have been called for payment and redemption,
together with the past due interest and the premium, if any, due thereon, or the bonds may be issued and delivered in exchange for a like par value amount of bonds to refund which the refunding bonds were issued. (Emphasis added.)
It is clear that the Board has statutory authority to issue refunding bonds. The question presented under the statute is whether the Board has authority to issue advance refunding bonds, that is bonds issued in advance of the redemption call or maturity of the outstanding bonds. Under the proposed advance refunding, the Refunding Bonds would be issued 10 years in advance of the redemption call or maturity of the Outstanding Bonds.
There are no cases or opinions of the Attorney General which address the question of authority to issue advance refunding bonds pursuant to Section 8.430. However, the Missouri courts have analyzed the status of advance refunding bonds under Missouri law. The leading case in this area is Stateex rel. St. Charles County v. Smith, 152 S.W.2d 1 (Mo. 1941). This case involved an issue of toll bridge revenue refunding bonds. The refunding bonds were to be issued two months prior to the call date for the outstanding bonds to be redeemed. During the two month period, the proceeds from the sale of the refunding bonds were to be held by a bank exclusively for the purpose of paying off the outstanding bonds on the call date. The court in the Smith case concluded that it was impractical to provide for cancellation of the outstanding bonds simultaneously with the issuance of the refunding bonds and further stated:
 All this should be done as expeditiously as circumstances will permit but the fact that there is a reasonable lapse between the maturity of the outstanding bonds and the issue of the refunding bonds in no sense increases the indebtedness or makes outstanding both sets of bonds at the same time.' Id.
at 7.
The Smith court concluded that the issuance of refunding bonds did not create a new obligation or indebtedness, but rather the refunding bonds were a substitute obligation for the outstanding bonds. The outstanding bonds were deemed satisfied or defeased by the establishment of a pledged escrow account as they became due. The Smith case also reflects a public policy of Missouri in favor of refunding bonds. This policy is based on the benefit to the public and to the taxpayers from the issuance of refunding bonds resulting from interest cost savings or the release of the issuer from restrictive covenants on the outstanding bonds.
Although the issue of statutory construction here presented has never been addressed by the courts, we have addressed a similar question in the context of another refunding statute. In Opinion No. 204, Keyes, 1977, we construed the provisions of Section 108.140, RSMo 1969, which authorizes political subdivisions to issue refunding bonds. That statute provides authority to political subdivisions to:
 [R]efund, extend, and unify the whole or part of their valid bonded indebtedness, or judgment indebtedness, and for such purpose may issue, negotiate, sell and deliver refunding bonds and with the proceeds therefrom pay off, redeem and cancel the bonds to be refunded as the same mature or are called for redemption. . . . (Emphasis added.)
The question presented under this statute is similar to the question presented by the proposed advance refunding, that is, is there sufficient statutory authority to issue refunding bonds in advance of the maturity or call of the outstanding bonds. The language of Section 108.140, like that of Section8.430, authorizes the issuance of refunding bonds to "pay off, redeem and cancel outstanding bonds" as the same mature. We determined that the language of Section 108.140
provided sufficient authority for the issuance of refunding bonds in advance of the maturity or redemption of the outstanding bonds, because the outstanding bonds would be paid off with proceeds of the refunding bonds "as the outstanding bonds mature". Likewise, in the proposed advance refunding, although the refunding bonds will be issued in advance of maturity, the proceeds of the bonds will be utilized to pay off the outstanding bonds as they mature as contemplated by the statute. See, also, Opinion Letter No. 74, Keyes, 1978.
A second legal question on which you have asked our opinion in conjunction with the proposed advance refunding is whether further legislative or statutory authorization is required to enable the Board to issue advance refunding bonds. The provision of Section 8.430 which authorize the Board to issue refunding bonds do not set forth any requirement for additional legislative authorization for such bonds. However, Section 8.420.7, RSMo Supp. 1982, dealing with revenue bonds provides:
 After August 13, 1976, any bonds which may be issued pursuant to the provisions of sections 8.370 to 8.450 shall be issued only for projects which have been approved by a majority of the house members and a majority of senate members of the fiscal affairs committee of the general assembly, so long as such committee exists, or by a majority of both houses of the general assembly if the fiscal affairs committee ceases to exist, and the approval by the fiscal affairs committee required by the provisions of section 8.380 shall be given only in accordance with this provision. For the purposes of approval of a project, the total amount of bonds issued for purposes of energy retrofitting in state-owned facilities shall be treated as a single project.
The question presented is whether these restrictions apply to an issue of refunding bonds issued pursuant to the provisions of Section 8.430. Under the authority of the Smith case discussed previously, the refunding bonds do not constitute a new obligation but rather create a substitute obligation for the outstanding bonds. The rationale of this case supports the notion that no additional legislative authorization is needed to enable the Board to issue refunding bonds. Section8.420.7 requires such authorization for Bonds issued to finance "projects" under the provisions of Sections 8.370 to8.450, but no new projects are being authorized in the proposed advance refunding. Rather, the refunding bonds merely constitute a restructuring of or substitution for the existing outstanding bonds. The Board has sufficient authority pursuant to the provisions of Section 8.430 to issue the advance refunding bonds proposed and under the rationale of the Smith case the provisions of Section 8.420.7 are not applicable to the Refunding Bonds because no new projects are being authorized.
The Smith case also resolves another question which you present relating to the application of Section 8.420.6 to the proposed advance refunding. Section 8.420.6, RSMo Supp. 1982, provides that:
 After August 13, 1976, the board shall not issue revenue bonds pursuant to the provisions of sections 8.370 to 8.450 for one or more projects, as defined in section 8.370, in excess of a total par value of one hundred million dollars.
The question presented is whether the Refunding Bonds will increase the total obligations outstanding under this provision. Since the Refunding Bonds will not constitute a new obligation under the Smith holding, the total bonds outstanding will not be increased by the issuance of Refunding Bonds for purposes of calculating the $100,000,000 limitation of Section 8.420.6.
The third legal question presented involves the statutory restrictions on the terms of the Refunding Bonds. Section8.430, RSMo 1978, provides in part as follows:
 No refunding bonds issued pursuant to the provisions of sections 8.370 to 8.450 shall be payable in more than forty years from the date thereof or shall bear interest at a rate in excess of six percent per annum.
This statutory provision would appear to restrict the interest rate on refunding bonds to six percent and the maturity on such bonds to 40 years. The maturity limitation would present no problems for the proposed refunding. However, the interest rate limitation of six percent, if applicable, would make the proposed refunding infeasible. Although current interest rates on bonds of this type are very attractive, the State's financial advisors do not expect that the proposed refunding bonds would bear a rate of interest less than six percent per annum.
Although the express language of Section 8.430 limits the interest rate on refunding bonds to six percent, a 1982 amendment to Section 8.420 would appear to modify the six percent interest limitation of Section 8.430. Section8.420.1 provides as follows:
 1. Bonds issued under and pursuant to the provisions of sections 8.370 to 8.450 shall be of such denomination or denominations, shall bear such rate or rates of interest not to exceed fifteen percent per annum, and shall mature at such time or times within forty years from the date thereof, as the board determines. The bonds may be either serial bonds or term bonds.
By its terms, this provision would appear to amend, at least by implication, the restrictive interest rate limitation of Section 8.430.
The judicial doctrine of repeal by implication turns on the assumption that the legislature cannot always know the tremendous detail contained in the great mass of statutory law of the state. In addition, the legislature does not have the time to extensively research these statutory provisions to determine what previous statutes should be repealed to provide consistency with later statutory enactments. Thus in enacting legislation, a repeal of an existing statute may arise by necessary implication from enactment of a later statute without mention or reference to the prior law. Sutherland, Statutes and Statutory Construction, Section 23.09 (4th Ed. 1972) (hereafter "Sutherland"). The doctrine of repeal by implication rests on the ground that the last expression of legislative will should control. 73 Am.Jur.2dStatutes Section 392 (1974). This doctrine derives from the presumption that the legislature intended to achieve a consistent body of law. Sutherland, Section 23.09.
Generally, there is a presumption against implied repeal. Sutherland, Section 23.10, 73 Am.Jur.2d, supra, at Section 396, State v. Oswald, 306 S.W.2d 559, 562 (Mo. 1957). Statutes which appear to conflict must be harmonized if at all possible. Edwards v. St. Louis County, 429 S.W.2d 718,721 (Mo. banc 1968). However, if a later act of the legislature is repugnant to a prior act, the prior act must be construed as repealed by implication to the extent of the conflict if the legislative intent to repeal is fairly shown. Id., State ex rel. Atkinson v. Planned IndustrialExpansion Authority of St. Louis, 517 S.W.2d 36, 49 (Mo. banc 1975), Sutherland, Section 23.09. The ultimate guide is the intent of the legislature. Edwards, supra, at 722. While the rules of statutory construction are helpful, the purpose and object of the legislation should not be ignored.Id.
The clear purpose and object of the legislature in enacting amendments to Section 8.420 was to raise the interest rate limitation on bonds issued by the Board to levels which would permit marketing of those bonds. The more difficult question of intent is whether the legislature by amending Section 8.420, also intended to repeal the six percent interest limitation in Section 8.430 for refunding bonds.
Similar questions have been addressed by the Missouri Supreme Court in two prior cases and in both instances the repeal by implication doctrine was applied. The first case is the Edwards case cited previously. Edwards involved a question of repeal by implication presented when a general statute setting forth an interest rate limitation on bonds issued by all political subdivisions, Section 108.170, RSMo, was amended in 1967, to raise the interest rate limitation to six percent. The court was asked to determine whether this statute repealed by implication a four percent interest limitation in Section 108.080, RSMo 1959, on bonds issued by counties. The court held that while Section 108.080 was a special act applying to counties only, Section 108.170
applied to counties as well. Since the interest rates in the two statutes were totally repugnant, the more recent enactment of Section 108.170 repealed by implication the four percent limitation of Section 108.080. The court reasoned that its decision implemented the purpose of the legislation which was to enable political subdivisions to issue bonds for public improvements under current market conditions. Edwards, supra, at 722.
The second case of note in analyzing the repeal by implication problem presented is the Atkinson case previously cited. Atkinson also involved the general interest rate limitation of Section 108.170. However, there the conflicting statute was Section 100.440 dealing with bonds of planned industrial expansion authorities. The Atkinson court relied on Edwards and held that because an authority was a municipality within the provisions of Section 108.170, the interest rate limitation found in Section 100.440 was repealed by implication. Atkinson, supra, at 49.
In the fact situation presented by your opinion request, the Refunding Bonds proposed to be issued by the Board are clearly bonds and thus are covered by the language of Section8.420, RSMo Supp. 1982, which provides that:
 Bonds issued under and pursuant to the provisions of sections 8.370
to 8.450 . . . shall bear such rate or rates of interest not to exceed fifteen percent per annum . . . .
This language is repugnant to the interest rate limitation expressed in Section 8.430. Thus, we believe the last act of the legislature, raising the interest rate limit of Section 8.420 to fifteen percent should be construed as repealing the prior act, Section 8.430, to the extent of conflict. This interpretation is consistent with the legislature's intent to aid the Board in issuance of bonds to carry out its purposes by setting interest rate limits high enough to allow marketing of those bonds.
In addition this interpretation is consistent with the statutory scheme contemplated by the legislature when the statutes relating to bonds issued by the Board were enacted in 1959. As originally enacted Section 8.420 relating generally to revenue bonds of the Board imposed an interest rate limitation of four percent while an interest rate of six percent was allowed under the provisions of Section8.430 on refunding bonds. It is illogical to assume, without further evidence of intent, that the legislature intended to modify this scheme by allowing a fifteen percent interest rate on all bonds issued by the Board except for refunding bonds which could only bear interest at a rate of six percent. Such an interpretation would render the provisions of Section8.430 authorizing refunding bonds a nullity.
Finally you have asked if there are any other restrictions imposed on refunding bonds issued by the Board. Sections 8.420 and 8.430 set forth various restrictions on the form and terms of bonds issued by the Board. Generally such bonds must mature within 40 years and shall have such other terms as set by the Board. In addition such bonds, unless sold to the United States or to any agency or instrumentality thereof, must be sold at public sale for no less than ninety-eight percent of par.
CONCLUSION
It is the opinion of this office that the Board of Public Buildings has the authority pursuant to the provisions of Section 8.430, RSMo 1978, to issue refunding bonds in advance of the redemption call or maturity of the outstanding bonds to be refunded and that no further legislative authorization is necessary under the provisions of Section 8.420.7, RSMo Supp. 1982. In addition, the issuance of refunding bonds will not create an additional obligation of the Board for purposes of calculating the $100,000,000 limitation on bonds of the Board imposed by Section 8.430. Finally, refunding bonds can bear a rate of interest not to exceed fifteen percent pursuant to the provisions of Section8.430 and shall have such terms and shall be sold in the manner provided by Sections 8.420 and 8.430.
Very truly yours,
 JOHN ASHCROFT Attorney General