Dear Ms. Kelly:
This opinion is in response to your questions asking:
 1) When a political subdivision of the State undertakes to issue general obligation bonds (other than private activity bonds) bearing an interest rate of 9%, must the bonds be sold at a public sale unless a resolution is adopted by the issuing jurisdiction giving clear justification why the sale should be a private sale?
 2) When a political subdivision of the State undertakes to issue general obligation bonds (other than private activity bonds) bearing an interest rate of 11%, can the bonds be sold at a private sale if a resolution is adopted by the issuing jurisdiction giving clear justification why the sale should be a private sale?
 3) When examining the proceedings relating to a proposed general obligation bond issue wherein the issuing jurisdiction has adopted a resolution giving a justification why the sale of the bonds should be a private sale and the bonds were in fact sold at a private sale, is the State Auditor to exercise discretion in accepting or rejecting the justification?
Section 108.170 of House Committee Substitute for Senate Bill No. 140, Eighty-Third General Assembly, First Regular Session, states:
 1 Other provisions of law to the contrary 2 notwithstanding, any and all bonds, notes, or other 3 evidences of indebtedness, including bonds, notes, or other 4 evidences of indebtedness payable solely from revenues 5 derived from any revenue-producing facility, hereafter 6 issued under any law of this state by any county, city, town, 7 village, school district, educational institution, drainage 8 district, levee district, nursing home district, hospital 9 district, library district, road district, fire protection 10 district, water supply district, sewer district, housing 11 authority, land clearance for redevelopment authority, 12 special authority created under section 64.920, RSMo, 13 authority created pursuant to the provisions of chapter 238, 14 RSMo, or other municipality, political subdivision or 15 district of this state shall be negotiable, may be issued in 16 bearer form or registered form with or without coupons to 17 evidence interest payable thereon, may be issued in any 18 denomination, and may bear interest at a rate not exceeding
19 ten percent per annum, and may be sold, at any sale
20 pursuant to any law applicable thereto, at the best price
21 obtainable, not less than ninety-five percent of the par
22 value thereof, anything in any proceedings heretofore had 23 authorizing such bonds, notes, or other evidences of 24 indebtedness, or in any law of this state to the contrary 25 notwithstanding. Such aforementioned bonds, notes, or
26 other evidences of indebtedness may bear interest at a rate
27 not exceeding fourteen percent per annum if sold at public
28 sale after giving reasonable notice of such sale, at the best
29 price obtainable, not less than ninety-five percent of the par
30 value thereof; provided, that such bonds, notes or other 31 evidences of indebtedness may be sold to the federal government 32 at private sale at a rate not exceeding fourteen 33 percent per annum; except that, the sale of bonds, notes, or 34 other evidences of indebtedness issued by the state board of 35 public buildings created under section 8.010, RSMo, the 36 state board of fund commissioners created under section 37 33.300, RSMo, any port authority created under section 38 68.010, RSMo, the bi-state metropolitan development district 39 authorized under section 70.370, RSMo, any special 40 business district created under section 71.790, RSMo, any 41 county, as defined in section 108.465, exercising the powers 42 granted by sections 108.450 to 108.470, any land clearance 43 for redevelopment authority created under section 99.330, 44 RSMo, the industrial development board created under 45 section 100.265, RSMo, any planned industrial expansion 46 authority created under section 100.320, RSMo, the higher 47 education loan authority created under section 173.360, 48 RSMo, the Missouri housing development commission 49 created under section 215.020, RSMo, the state environmental 50 improvement and energy resources authority 51 created under section 260.010, RSMo, the agricultural and 52 small business development authority created under 53 section 348.020, RSMo, any industrial development corporation 54 created under section 349.035, RSMo, or the health 55 and educational facilities authority created under section 56 360.020, RSMo, shall, with respect to the sales price, 57 manner of sale and interest rate, be governed by the specific 58 sections applicable to each of these entities rather than this 59 section and except that, the sale of bonds, notes or other
60 evidences of indebtedness issued by any housing authority
61 created under section 99.040, RSMo, may be sold at any sale,
62 at the best price obtainable, no less than ninety-five
63 percent of the par value thereof, and may bear interest at a
64 rate not exceeding fourteen percent per annum, any law of
65 this state to the contrary notwithstanding. The sale shall be
66 a public sale unless the issuing jurisdiction adopts a
67 resolution setting forth clear justification why the sale
68 should be a private sale except that private activity bonds
69 may be sold either at public or private sale. Industrial 70 development revenue bonds may be sold at private sale and 71 bear interest at a rate not exceeding fourteen percent per 72 annum if sold pursuant to any law applicable thereto, at the 73 best price obtainable, not less than ninety-five percent of 74 the par value thereof. 75 2. Other provisions in subsection 1 of this section to the 76 contrary notwithstanding, revenue bonds issued for airport 77 purposes by any constitutional charter city in this state 78 which now has or may hereafter acquire a population of 79 more than four hundred fifty thousand but less than six 80 hundred thousand inhabitants, according to the last federal 81 decennial census, may bear interest at a rate not exceeding 82 fourteen percent per annum if sold at public sale after 83 giving reasonable notice, at the best price obtainable, not 84 less than ninety-five percent of the par value thereof.
Section 108.170 of House Committee Substitute for Senate Bill No. 140 provides at lines 18 to 22 that certain bonds may be sold at "any sale", whether private or public, when the interest rate thereon does not exceed ten percent (10%). Lines 25 to 30 of Section 108.170 of House Committee Substitute for Senate Bill No. 140 provide that certain bonds may bear interest rates not exceeding fourteen percent (14%) per annum if such are sold at public sale after giving reasonable notice of such. Lines 59 to 69 of Section 108.170 of House Committee Substitute for Senate Bill No. 140 provide that the sale of certain bonds must be public unless the issuing jurisdiction adopts a resolution setting forth clear justification why the sale should be a private sale. The first two provisions existed in prior law. See Section 108.170, RSMo Supp. 1984 (repealed). The latter provision is new to the law with House Committee Substitute for Senate Bill No. 140.
We find that this latter provision introduces some ambiguity as to the interest rates to be applied to bonds. In particular, we find the words "The sale" on line 65 of Section 180.170 of House Committee Substitute for Senate Bill No. 140 to be ambiguous, as this phrase does not identify the bonds to which the rest of the sentence applies. One of the accepted canons to be applied in construing a statute permits and often requires an examination of the historical development of the legislation, and in doing so, resort may be had to the journals of the legislature and the original bill and amendments thereto. State ex rel. Missouri Power LightCompany v. Riley, 546 S.W.2d 792, 797 (Mo.App., K.C. 1977).
House Committee Substitute for Senate Bill No. 140 was enacted in response to Section 621 of the Deficit Reduction Act of 1984, P.L. 98-369, 98 Stat. 494, 915, amending26 U.S.C. § 103(n), which requires the allocation of private activity bonds. See Section 2(4) of House Committee Substitute for Senate Bill No. 140 and 26 U.S.C. § 103(n)(7) as enacted by the Deficit Reduction Action of 1984 (defining the term "private activity bonds").
Senate Bill No. 140, Eighty-Third General Assembly, First Regular Session, as originally introduced, was entitled "AN ACT relating to private activity bonds." This version did not contain any amendments to Section 108.170, RSMo. The original version of the bill was read the first time in the Senate on Wednesday, January 9, 1985. 1985 Senate Journal, Eighty-Third General Assembly, First Regular Session (hereinafter sometimes referred to as "Senate Journal") 51. Senate Bill No. 140 was read a second time in the Senate on Wednesday, January 16, 1985, and referred to the Urban Affairs and Industrial Development Committee. 1985 Senate Journal 188. On Thursday, March 7, 1985, the Committee on Urban Affairs and Industrial Development reported that it had considered the bill and recommended that the bill do pass. 1985 Senate Journal 482.
On Thursday, April 4, 1985, Senate Bill No. 140 was taken up for perfection. 1985 Senate Journal 700. At that time, Senate Amendment No. 1 to Senate Bill No. 140, was adopted. 1985 Senate Journal 700-703. In part, this amendment changed the title from "AN ACT relating to private activity bonds." to "AN ACT to repeal section 108.170, RSMo Supp. 1984, relating to certain bond issues, and to enact in lieu thereof twelve new sections relating to the same subject." 1985 Senate Journal 701. This amendment also deleted housing authorities from the list of political subdivisions whose bonds are governed by the specific statutes applicable to them with respect to the sales price, manner of sale, and interest rate of their bonds, and added the following language:
 and except that, the sale of bonds, notes or other evidences of indebtedness issued by any housing authority created under section 99.040, RSMo, may be sold at any sale, public or private, at the best price obtainable, not less than ninety-five percent of the par value thereof, and may bear interest at a rate not exceeding fourteen percent per annum, any law in this state to the contrary notwithstanding.
1985 Senate Journal 702-703. This amendment was apparently aimed at the implied repeal of provisions of Section 99.150.1 and .2, RSMo Supp. 1984, which, with certain exceptions not relevant here, authorizes housing authorities to sell their bonds at any rate of interest as the authorizing resolution may require at public sale held after notice published once at least five days prior to such sale in a newspaper having general circulation in the area of operation and in a financial newspaper published in Kansas City or in the City of St. Louis.
On Tuesday, April 9, 1985, Senate Bill No. 140, as amended by Senate Amendment No. 1, was reported perfected. 1985 Senate Journal 711. On Thursday, April 11, 1985, Senate Bill No. 140, as amended by Senate Amendment No. 1, was read the third time in the Senate and passed. 1985 Senate Journal 742-743.
On Thursday, April 11, 1985, Senate Bill No. 140, as amended by Senate Amendment No. 1, was reported to the House of Representatives and read the first time. 1985 House Journal, Eighty-Third General Assembly, First Regular Session (hereinafter sometimes referred to as "House Journal") 874. On Monday, April 15, 1985, Senate Bill No. 140, as amended by Senate Amendment No. 1, was read in the House for the second time. 1985 House Journal 889. On Wednesday, April 17, 1985, Senate Bill No. 140, as amended by Senate Amendment No. 1, was referred to the Budget Committee. 1985 House Journal 983.
On Wednesday, May 29, 1985, the Budget Committee reported its recommendation that the House Committee Substitute for Senate Bill No. 140 do pass. 1985 House Journal 1619.
House Committee Substitute for Senate Bill No. 140 substituted the following language for that quoted supra:
 except that, the sale of bonds, notes or other evidences of indebtedness issued by any housing authority created under section 99.040, RSMo, may be sold at any sale, at the best price attainable, not less than ninety-five percent of the par value thereof, and may bear interest at a rate not exceeding fourteen percent per annum, any law of this state to the contrary notwithstanding. The sale
shall be a public sale unless the issuing jurisdiction adopts a resolution setting forth clear justification why the sale should be a private sale.
(Emphasis added.)
The words "The sale" are ambiguous, because: (1) in the preceding phrase House Committee Substitute for Senate Bill No. 140 authorizes housing authorities to sell their bonds at "any sale" as a direct response to Section 99.150, RSMo Supp. 1984 (which requires most housing authority bond sales to be public)[1]; and (2) the sentence in question refers to the "issuing jurisdiction". From the legislative history and context of this language, we interpret the words "The sale" as being intended by the drafters of the House Committee Substitute to refer only to the sale of bonds by housing authorities; the principal subject of these amendments being whether the bonds of housing authorities are to be sold at private or public sale.
On Thursday, June 13, 1985, House Committee Substitute for Senate Bill No. 140 was taken up and House Amendment No. 1 was offered, which added the following language to that quoted above:
 except that private activity bonds may be sold either at public or private sale.
1985 House Journal 2157. House Amendment No. 1 to House Committee Substitute for Senate Bill No. 140 was adopted, and the House Committee Substitute, as amended was read the third time and passed. 1985 House Journal 2157-2159.[2]
House Amendment No. 1 raises additional confusion, because it refers to "private activity bonds". The term "private activity bonds" is defined in Section 2(4) of House Committee Substitute for Senate Bill No. 140 as "certain industrial development bonds and student loan bonds designated as such by federal law pursuant to P.L. 98-369." "Private activity bond" is defined in Section 621 of the Deficit Reduction Act of 1984, P.L. 98-369, 98 Stat. 494, 916, amending 26 U.S.C. § 103(n)(7), generally as a federally tax-exempt bond that is either an industrial development bond or a student loan bond. The term "industrial development bond" is defined in 26 U.S.C. § 103(b)(2) and (3) to exclude obligations used to carry on a trade or business by a governmental unit. Thus, bonds used to finance projects run by a housing authority would not generally be industrial development bonds. In addition,26 U.S.C. § 103(n)(7)(B), as enacted by the Deficit Reduction Act of 1984, defines the term "private activity bond" to exclude certain multi-family residential housing. It is also unlikely that housing authorities would be involved with student loan bonds. See 26 U.S.C. § 103(n)(8), as enacted by the Deficit Reduction Act of 1984 (defining the term "student loan bond"). Thus, it can be seen that housing authorities would not generally be involved with the issuance of private activity bonds. This brings into question whether the words "The sale" in Section108.170.1 of House Committee Substitute for Senate Bill No. 140 refer only to housing authorities or to all bond sales generally. If the latter interpretation is adopted, there would be a conflict between the provision of Section108.170.1 of House Committee Substitute for Senate Bill No. 140 allowing the private sale of certain bonds at interest rates not exceeding ten percent (10%) per annum and the language requiring a public sale absent a resolution stating "clear justification" why the bonds should be sold at a private sale. There would also be a conflict between the provision in Section 108.170.1 of House Committee Substitute for Senate Bill No. 140 requiring the public sale of certain bonds with interest rates exceeding ten percent (10%) per annum but not exceeding fourteen percent (14%) per annum and the provision allowing the private sale of such bonds upon a showing of "clear justification".
The ultimate guide in the construction of statutes is the intent of the General Assembly. Edwards v. St. LouisCounty, 429 S.W.2d 718, 722 (Mo. banc 1968). Statutes that appear to conflict should be read together, if at all possible, so that they may stand together. Id., at 721. If the statutes cannot be reconciled, the last act of the General Assembly prevails. State ex rel. Atkinson v.Planned Industrial Expansion Authority of St. Louis,517 S.W.2d 36, 49 (Mo. banc 1975). From the context of this language and its legislative history, we believe it is possible to harmonize the provisions of Section 108.170.1 of House Committee Substitute for Senate Bill No. 140. The words "The sale" in the language in question refer only to the sales of bonds by housing authorities.
Accordingly, the answer to the first question asking whether general obligation bonds of a political subdivision bearing interest at a rate of nine percent (9%) must be sold at public sale unless a resolution is adopted by the issuing jurisdiction giving clear justification why the sale should be a private sale is "no". The language of Section 108.170.1 of House Committee Substitute for Senate Bill No. 140 referred to in the question (lines 65-69) is not applicable to political subdivisions generally, but is only applicable to housing authorities.
The answer to the second question asking whether general obligation bonds of a political subdivision bearing interest at a rate of eleven percent (11%) per annum can be sold at a private sale if a resolution is adopted by the issuing jurisdiction giving clear justification why the sale should be a private sale is "no" for the same reason given in response to the first question.
The third question is moot. Under Section 108.240, RSMo Supp. 1984, the Missouri State Auditor registers only general obligation bonds. The bonds of housing authorities are not general obligation bonds. Section 99.140.4, RSMo 1978. Therefore, the Missouri State Auditor will probably never have occasion to review housing authority resolutions giving a justification why the sale of bonds should be private pursuant to the provisions of Section 108.170.1 of House Committee Substitute for Senate Bill No. 140.
Conclusion
It is the opinion of this office that the sentence, "The sale shall be a public sale unless the issuing jurisdiction adopts a resolution setting forth clear justification why the sale should be a private sale except that private activity bonds may be sold either at public or private sale.", in Section 108.170.1 of House Committee Substitute for Senate Bill No. 140, Eighty-Third General Assembly, First Regular Session, applies only to the sales of bonds of housing authorities created under Section 99.040, RSMo.
Yours very truly,
 WILLIAM L. WEBSTER Attorney General
[1] House Committee Substitute for Senate Bill No. 140 deletes the words "public or private" that followed the words "any sale" in Senate Amendment No. 1 to Senate Bill No. 140.
[2] House Committee Substitute for Senate Bill No. 140, as amended by House Amendment No. 1, was reported to the Senate on Thursday, June 13, 1985. 1985 Senate Journal 1838-1839. On Friday, June 14, 1985, House Committee Substitute for Senate Bill No. 140, as amended by House Amendment No. 1, was adopted, read the third time, and passed by the Senate. 1985 Senate Journal 1879-1880. On Friday, June 21, 1985, House Committee Substitute for Senate Bill No. 140, as amended by House Amendment No. 1, was signed by the President Pro Tem of the Senate. 1985 Senate Journal 2094-2095. On this same date, House Committee Substitute for Senate Bill No. 140, as amended by House Amendment No. 1, was signed by the Speaker of the House, 1985 House Journal 2518, and delivered to the Governor, 1985 Senate Journal 2095. On July 31, 1985, this legislation was approved by the Governor.