[EDITORS' NOTE: THIS OPINION HAS BEEN WITHDRAWN EFFECTIVE JULY 11, 1996.]
Missouri Ethics Commission Post Office Box 1254 Jefferson City, MO 65102
Ladies and Gentlemen:
This opinion letter is in response to your questions relating to Proposition A approved by the voters at the November 8, 1994 election (hereinafter "Proposition A") and relating to Conference Committee Substitute for House Committee Substitute for Senate Bill No. 650, 87th General Assembly, Second Regular Session (1994) (hereinafter "Senate Bill No. 650"). Your specific questions are as follows:
1. Do the spend-down provisions of Section 130.130 as enacted by Proposition A apply to candidates who ran for election on November 8, 1994?
2. Regarding Section 130.130 as enacted by Proposition A, does a candidate have to be under the ceiling on campaign funds on the 90th day after the election or may the candidate be under the ceiling at any time between the election date and 90 days thereafter?
3. After January 1, 1995, do the provisions of Proposition A or the provisions of Senate Bill No. 650 apply if there is a conflict between the provisions of Proposition A and the provisions of Senate Bill No. 650?
4. Under Section 130.130 as enacted by Proposition A, if the balance of campaign funds exceeds the ceiling set forth in such section, to reach the ceiling may a candidate incur expenses for a future campaign or does the term "expenses" in such section refer only to expenses of the immediate past campaign?
5. If a person was holding elective office on November 8, 1994, but such person's office was not up for election on such date, do campaign contributions received prior to November 8, 1994 count against the contribution limits imposed by Section 130.100 as enacted by Proposition A or may the candidate receive after November 8, 1994 from a prior contributor the maximum contribution set forth in Section 130.100?
In addressing your questions, we do not address the constitutionality of Proposition A or Senate Bill No. 650 or any of their provisions. It has been the long-standing policy of this office not to opine on the constitutionality of statutes. The Missouri Supreme Court has stated:
 However, an Attorney General may not declare a statute unconstitutional. This power is reserved to the courts by the Constitution. Gershman Investment Corporation v. Danforth, 517 S.W.2d 33, 35
(Mo. banc 1974).
Therefore, we do not consider the constitutionality of any of the statutes relevant to your questions.
Proposition A provides in relevant part as follows:
 130.100. Contribution limits: There shall be the following limitations on campaign contributions:
 (1) No person or committee shall make a contribution to any one candidate or candidate committee with an aggregate value in excess of:
 (a) $100 per election cycle per candidate in districts with fewer than 100,000 residents;
 (2) $200 per election cycle per candidate, other than statewide candidates, in districts of 100,000 or more residents. For purposes of this section, "statewide candidates" refers to those candidates seeking election to the office of Governor, Lieutenant Governor, Attorney General, Auditor, Treasurer and Secretary of State.
 (3) $300 per election cycle per statewide candidate.
 (2) No person, entity or committee shall make a contribution to any other persons, entities or committees for the purpose of contributing to a specific candidate which when added together or when added together with contributions made directly to the candidate or to the candidate's committee, will have an aggregate value in excess of the limits stated in section 1.
* * *
 130.130. Excess Campaign Contributions: Within ninety days of the election to fill the office for which the candidate has filed or declared, said candidate and that candidate's campaign committee shall either (a) turn over to the state of Missouri for the benefit of the Missouri Ethics Commission, or (b) return to those persons reported as contributors to the candidate's campaign, any balance of campaign funds in excess of expenses incurred for the campaign, except for an amount no greater than ten times the individual contribution limit set forth above for that particular office.
* * *
Proposition A was proposed by initiative petition and was approved by the voters at the November 8, 1994 election. Proposition A became effective upon its approval by the voters on November 8, 1994. See, Missouri Attorney General Opinion Letter No. 212-94.
Your first question asks if the spend-down provisions of Section 130.130 as enacted by Proposition A apply to candidates who ran for election on November 8, 1994. A statute enacted by way of the initiative process is to be judged on the same basis as a statute passed by the legislature. Labor's Educational andPolitical Club — Independent v. Danforth, 561 S.W.2d 339, 343
(Mo. banc 1977). In interpreting a statute, the courts consider the language of the statute and give the words employed their plain and ordinary meaning. Community Federal Savings LoanAssociation v. Director of Revenue, 752 S.W.2d 794, 798 (Mo. banc 1988), cert. denied, 488 U.S. 893, 109 S.Ct. 231, 102 L.Ed.2d 221
(1988). The clear and unambiguous terms of the statute, which became effective upon its approval by the voters on November 8, 1994, give the candidates ninety days to comply with the spend-down provisions of the statute. The statute is in effect during that time period. There is no indication in the statute of an intent that the statute not apply to candidates running for office at the November 8, 1994 election. Based on the effective date of the statute and its clear and unambiguous terms, we conclude that the spend-down provisions of Section 130.130 apply to candidates who ran for election on November 8, 1994.
Your second question asks if a candidate has to be under the ceiling on campaign funds established by Section 130.130 on the 90th day after the election or if the candidate can be under the ceiling at any time between the election date and 90 days thereafter. The relevant provision in Section 130.130 says "[w]ithin ninety days of the election" the candidate has to be under the ceiling. "In a temporal context, the word `within' means `on or before.'" Evergreen Lawn Service, Inc. v. Directorof Revenue, 685 S.W.2d 829, 831 (Mo. banc 1985). Use of the term "within" indicates the candidate is not required to be under the ceiling on the 90th day after the election but can comply with the statute by being under the ceiling before that date. Based on the meaning of the term "within", we conclude a candidate may comply with the ceiling on campaign funds by being under the ceiling at any time between the election date and 90 days thereafter.
Your third question asks if there is a conflict between the provisions of Proposition A and the provisions of Senate Bill No. 650, after January 1, 1995 which provisions apply. Senate Bill No. 650 expressly provides it "shall become effective on January 1, 1995." Senate Bill No. 650 was passed by the General Assembly during the legislative session ending in May, 1994, and was approved by the Governor on July 7, 1994. Proposition A was proposed by initiative petition, was approved by the voters at the November 8, 1994 election, and was effective upon its approval by the voters on November 8, 1994. Neither Proposition A nor Senate Bill No. 650 contains any provision that it intends to repeal the other.
Unless two statutes are irreconcilably inconsistent, both must stand. Nicolai v. City of St. Louis, 762 S.W.2d 423, 426
(Mo. banc 1988). Repeals by implication are not favored.Parkway Motors, Inc. v. Thompson, 825 S.W.2d 302, 303 (Mo. banc 1992). Statutes which appear to be conflicting should be harmonized, if at all possible, so that they may stand together.Edwards v. St. Louis County, 429 S.W.2d 718, 721 (Mo. banc 1968). With regard to Proposition A and Senate Bill No. 650, although both concern campaign finance, they are not irreconcilably inconsistent. Therefore, we conclude that they stand together in regulating campaign finance.
The more restrictive statute will prevail if there is any conflict as to specific provisions. For example, Section 130.100, as enacted by Proposition A, and Section 130.032, as enacted by Senate Bill No. 650, both impose limits on campaign contributions. After Senate Bill No. 650 becomes effective on January 1, 1995, any campaign contribution must be within the limits imposed by both Section 130.100 and Section 130.032. There must be compliance with both sections resulting in the more restrictive provision setting the limit on campaign contributions. Similarly, in those other areas where provisions enacted by Proposition A and provisions enacted by Senate Bill No. 650 impose different restrictions on similar conduct, there must be compliance with the relevant provisions enacted by both Proposition A and Senate Bill No. 650. As a result, the more restrictive provision applicable to the conduct governs.
Your fourth question also concerns the spend-down provisions of Section 130.130 as enacted by Proposition A. You inquire if the balance of campaign funds exceeds the ceiling set forth in such section, to reach the ceiling may a candidate incur expenses for a future campaign or does the term "expenses" in such section refer only to expenses of the immediate past campaign.
The relevant provision in Section 130.130 refers to "expenses incurred for the campaign." [Emphasis added.] "The article `the' . . . indicated identity with something previously mentioned." Palmer v. Kansas City, 248 S.W.2d 667, 670 (Mo.App. 1952). "`The' is defined as being `used as a function word to indicate that a following noun or noun equivalent refers to someone or something previously mentioned or clearly understood from the context of the situation . . . .' Webster's Third New International Dictionary 2368 (1971)." Claspill v. State,Division of Economic Development, 809 S.W.2d 87, 89 (Mo.App. 1991). The use of the work "the" before the word "campaign" indicates that the expenses to which the provision refers are the expenses of the immediate past campaign.
Further support for this conclusion is the context in which the phrase "expenses incurred for the campaign" is used. It is a well-settled rule of construction that the context and related clauses of a statute are to be considered when construing a particular portion of the statute. State v. Campbell, 564 S.W.2d 867,869 (Mo. banc 1978). The beginning of Section 130.130 refers to "[w]ithin ninety days of the election to fill the office for which the candidate has filed or declared." This phrase obviously refers to the immediate past election. Section 130.130 sets the ceiling on the balance of campaign funds at "an amount no greater than ten times the individual contribution limit set forth above for that particular office." [Emphasis added.] This phrase obviously refers to the office filled at the immediate past election. The context and related clauses of Section 130.130 indicate the "expenses incurred for the campaign" are the expenses of the immediate past campaign at which the candidate sought election for a particular office.
Based on the use of the word "the" before the word "campaign" in the phrase "expenses incurred for the campaign" and based on the context in which such phrase is used, we conclude that the term "expenses" in such section refers only to expenses of the immediate past campaign and that a candidate may not incur expenses for a future campaign in order to reach the ceiling on the balance of campaign funds set forth in Section 130.130.
Your fifth and final question asks if a person was holding elective office on November 8, 1994, but such person's office was not up for election on such date, do campaign contributions received prior to November 8, 1994 count against the contribution limits imposed by Section 130.100 as enacted by Proposition A or may the candidate receive after November 8, 1994 from a prior contributor the maximum contribution set forth in Section 130.100. As a general rule, statutes are presumed to operate prospectively unless the legislative intent that they be given retroactive operation clearly appears from the express language of the act or by necessary or unavoidable implication. LincolnCredit Co. v. Peach, 636 S.W.2d 31, 34 (Mo. banc 1982), appealdismissed, 459 U.S. 1094, 103 S.Ct. 711, 74 L.Ed.2d 942 (1983). Nothing in Proposition A indicates an intent that this provision be given retroactive operation. Therefore, we conclude that the contribution limits imposed by Section 130.100 are prospective only. A person holding elective office on November 8, 1994 whose office was not up for election on such date may receive the maximum contribution set forth in Section 130.100 from a prior contributor.
Very truly yours,
 JEREMIAH W. (JAY) NIXON Attorney General